UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OUSMANE BAH,
    Plaintiff

                    COMPLAINT and JURY DEMAND

      v.

                    Docket No. (To be assigned)

APPLE INC., and
SECURITY INDUSTRY
SPECIALISTS, INC. ,
    Defendants

---

## Preliminary Statement

This Complaint arises from repeated false felonious accusations against the Plaintiff by Defendants for thefts across the eastern seaboard that were actually committed by one or more impostors in Pennsylvania, New Jersey, New York, Connecticut, and Massachusetts between April 2018 and February 2019. These accusations included one of theft in Boston, MA in May 2018 and one in Holyoke, MA in December 2018, which are the gravamen for relief in this Complaint.

This Complaint alleges that the Defendants' investigative practices leading to these false allegations were inadequate and provided no reasonable basis for these accusations, which were made in reckless disregard for their truth or falsity. The private Defendant Apple and SIS' accusations were inherently unreasonable, as they were based on information which was, on its face, unreliable. The private Defendants' repeated accusations claiming that the Plaintiff as a thief across multiple jurisdictions created a chain reaction, resulting in recurring false accusations as the actual impostor continued to shoplift.

Apple and SIS' reckless and malicious behavior is further evidenced by their pursuing wrongful criminal charges against the Plaintiff while simultaneously failing to preserve video evidence of the thefts and the impostor's true identity — evidence that would have conclusively exonerated the Plaintiff.

1

## Statement of the Case

The Complaint in this matter initially sought damages for the corporate Defendants' defamatory acts and malicious prosecution in multiple states, including Massachusetts, New York, and New Jersey.  While the District Court for the Southern District of New York  left the New York claims intact, has dismissed the portion of the initial Complaint including the Massachusetts related thefts. The Plaintiff files now in US District Court in Massachusetts to ensure that the Boston- and Holyoke-related claims are timely filed in the appropriate jurisdiction.

## Parties

1.  Plaintiff is a natural person. At the time these allegations commenced in April 2018, he was a 17-year-old Black male honors high school student at Bronx Latin Academy.  He currently resides in New York City.

2.  Defendant Apple Inc. (hereinafter "Apple") is an American multinational corporation with its principal place of business in Cupertino, California.  Apple derives substantial revenue from interstate commerce.

3.  Defendant Security Industry Specialists, Inc. (hereinafter "SIS") is a nationwide corporation with its principal place of business in Culver City, California.  SIS derives substantial revenue from interstate commerce.

4.  This action arises out of the Defendants' negligent, reckless, and defamatory actions that led to Mr. Bah's arrest and detainment; continual malicious prosecution; deprivation of his civil rights; injuries to his reputation and character; and significant emotional distress. The events at issue occurred in multiple states, including Massachusetts.

5.  Plaintiff properly brings this suit in federal court on the basis of diversity jurisdiction.  As to the common law claims, this Court has jurisdiction based upon the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332, District Courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and are between citizens of different states.

6.  Defendants' connections in this forum meet the minimum contacts standard, carrying out continuous and systematic activity in the jurisdiction, allowing this Court to exercise general personal jurisdiction. *See International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). Defendant Apple has multiple store locations within the jurisdiction, including locations where the complained-of offenses occurred. Defendant SIS provides security services in Apple's Massachusetts

stores, including, upon information and belief, concerning the stores where complained of activity occurred.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391 because each Defendant conducts business in and can be found in this district, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## General Allegations

8. At all times relevant to this Complaint, Defendant Apple operated retail stores in King of Prussia, PA; Boston, MA; Trumbull, CT; Greenwich, CT; Paramus, NJ; Freehold, NJ; Cherry Hill, NJ; Millburn, NJ; Short Hills, NJ; Rockaway, NJ; Staten Island, NY; and Holyoke, MA.

9. On March 26, 2018, Plaintiff obtained a learner's permit for operation of a motor vehicle with the supervision of a licensed driver in New York State. The temporary form issued by the State of New York consists of a printout with Mr. Bah's height, weight, date of birth, and eye color, but no photograph. The interim learner's permit contains a disclaimer in bold capital letters: "**THIS TEMPORARY DOCUMENT IS NOT VALID FOR IDENTIFICATION PURPOSES**." *See learner's permit, Exhibit 1, attached.*

10. At some point prior to May 2018, the Plaintiff's temporary learner's permit went missing. By that time Mr. Bah had received his permanent copy, which was laminated plastic, not a computer printout, and had his photograph.

## The Connecticut Theft and Detention

11. In Greenwich, Connecticut, in April 2018, Apple caused to be detained an individual it believed to be the Plaintiff, Ousmane Bah, accusing the individual of having stolen merchandise from one of its retail stores.

12. Apple identified the individual as Bah through examination of a printed temporary learner's permit that was likely a copy of Mr. Bah's. This permit stated the user's height, sex, weight, and eye color, but had no photograph of Mr. Bah.

13. Use of nonphotographic identification is an unreliable method of identifying an individual, especially when the identification method being used warns against using it for identification purposes. Reliance solely on such form of identification to accuse an individual of a felony, absent other identifying documentation, would be not only negligent, but also reckless.

14.     The Connecticut thief (hereinafter, the "impostor") was not Plaintiff Ousmane Bah and, other than being Black, did not resemble him and did not meet the physical description on the permit.  As an example, the impostor was 6'1" tall; the permit describes Bah as 5'7," a difference of half a foot.

15.     Upon information and belief, Apple's employees and agents, individually and jointly, retained some portion of video evidence of the alleged thief stealing Apple property in Connecticut.  Also upon information and belief, Defendants created a record indicating that the depicted thief was named Ousmane Bah and published this information both to SIS and Apple stores in the Northeast, including Massachusetts, by varying means.

16.     Upon information and belief, both Apple and SIS published this information to not only each other but also to third parties.

## The Paramus, New Jersey Theft

17.     On May 24, 2018, Defendant SIS, acting on behalf of Defendant Apple, apprehended a person whom an SIS security officer claimed stole merchandise from a store in Paramus, New Jersey. That person, again the impostor, was subsequently surrendered to the Paramus police and placed under arrest.

18.     At first, the impostor attempted to resist apprehension but was eventually handcuffed by SIS employee Steven Yhap.

19.     Once cuffed, the impostor was brought back to the store, placed in the management office, and interrogated by Yhap and "Brian," the store manager. Once back at the store, while still in handcuffs, the impostor was searched for weapons and ID.

20.     Upon information and belief, the impostor was carrying the above-referenced learner's permit of Ousmane Bah, which had no photograph, was facially unreliable as identification, and described a person who did not resemble the impostor.

21.     Even when the impostor misspelled "Ousmane Bah" on a booking statement, initially writing his own name as "Ousama Bah" and then scratching it out before

4

writing the correct spelling, the Paramus Police Department took no further steps to identify the impostor now in their custody.

22.     Yhap identified the impostor as Ousmane Bah to the Paramus (NJ) Police Department with the intent that his identification evidence would be relied upon by the officers.

23.     Yhap, as early as the Paramus arrest on May 24, 2018, was on actual or constructive notice that the identification of Bah was unreliable.  This notice included SIS's records naming a different individual from Montreal as Ousmane Bah; the absence of reliable identification; and the inconsistency between the description on the learner's permit of the Plaintiff and the impostor's own physical characteristics.  However, Yhap did not highlight these contradictory facts to the Paramus police.

24.     This failure to advise the police of pertinent information is evidence of Yhap and SIS' reckless indifference to the actual identity of the impostor, and to whether or not they had misidentified Ousmane Bah as a thief.

25.     Yhap surrendered the impostor to an officer of the Paramus Police Department, where he was taken and questioned by Det. Paul Siemen.  SIS further represented to the Paramus police that the store had retained video evidence of the impostor's theft and would provide it to the Paramus police and/or prosecutors.

26.     Steven Yhap's identification of the Plaintiff as the Paramus thief, acting as an agent for Defendant Apple, was without probable cause

27.     Without probable cause, SIS began linking prior thefts in the region involving the impostor to the Plaintiff.  Yhap, on behalf of SIS and Apple, advised police in Millburn, NJ (the jurisdiction including Short Hills) that a theft, committed by the impostor, had occurred on May 5, 2018 at the Short Hills Apple Store.  He further (falsely) advised police that the theft had been committed by Plaintiff Ousmane Bah.  Yhap advised police that he would provide the police with video showing the theft.

28.     SIS, as Apple's agent, began circulating "Be on the Lookout" (hereinafter "BOLO") notices with the impostor's image indicating that "Ousmane Bah," with the impostor's photo, was a "known shoplifter."  Upon information and belief, these circulars were sent electronically not only to Apple store employees, including stores in Massachusetts,  but also to other parties and police departments.

**The Boston Theft**

29. On May 31, 2018, the impostor pocketed a total of twelve individual Apple Pencils (or styluses), each worth $100, from various locations in Apple's store located on Boylston Street in Boston, MA.  The thefts occurred over a five- to ten-minute period before the impostor exited the store, at which time the thefts were discovered by Apple and/or SIS, likely through technological means (see below).

30. After the thief exited the store and Apple and SIS were on notice of the theft, Apple employee "Sheldon," last name unknown, called the Boston Police Department and informed them that a theft had occurred and was recorded on store video.

31. Despite the very brief time between the thefts' discovery and Apple's telephone call, SIS loss prevention analyst John Beswick told the police that Apple (and/or SIS) had positively identified the person who had committed the thefts in Boston as the same person who had committed thefts in Connecticut, and named the person positively as Ousmane Bah.

32. Upon information and belief, Beswick relied upon the video or photographic documentation Apple and/or SIS had in its records concerning  the Connecticut theft, as well as Apple and/or SIS' false identification of the thief as Ousmane Bah, and also relied upon information from SIS from the New Jersey theft falsely naming the thief as Ousmane Bah.

33. The thief in Boston was the same impostor who committed the Connecticut and New Jersey thefts.

34. However, as stated previously, the impostor was not named Ousmane Bah and was not the Plaintiff.  Mr. Bah was not in Massachusetts when the thefts occurred and had never visited the state.

35. At the time the Boston thefts occurred, as noted above, both Apple and SIS knew or were constructively aware that its identification of the thief as Bah was based upon unreliable evidence.

36. When John Beswick named the Boston thief as Ousmane Bah, he did not advise Boston police officers of the material fact that Apple and SIS' (mis)identification of Bah was conflicted or unreliable.

37. Subsequently, on May 31, 2018, John Beswick, on behalf of SIS and as an agent for Apple, filed a police incident report identifying the Boston thief as Plaintiff Ousmane Bah.

38.   The police incident report filed by John Beswick falsely accused Ousmane Bah of committing a theft of Apple property.

39.   The false identification of Ousmane Bah as the thief in the Apple store came, in part, from a Be On the Lookout "("BOLO") bulletin sent by SIS and/or Apple to the Boston store, directly and proximately resulting in the recklessly false identification of the Connecticut thief and Paramus, NJ thief by SIS personnel.

40.   John Beswick filed the police incident reports accusing Ousmane Bah of the Boston thefts with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

41.   At the time of the police reports, John Beswick indicated that Apple intended to press charges for the theft against "Ousmane Bah."  As with Paramus, NJ, both Apple and SIS advised the Boston Police that they had positively identified the thief from security camera evidence and committed to provide such evidence to the Boston Police.

42.   However, this video (as with all of the prior videos) showed an image of the impostor, who did not resemble Ousmane Bah.

43.   Had the Defendants presented the video, as promised, it would have immediately exonerated Ousmane Bah of the Boston charges, and indeed of all other claims that he had stolen from Apple stores.

44.   The accusations in the police report provided by Beswick on behalf of SIS and Apple were without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was unreliable at the time that Beswick signed it, and therefore did not possess trustworthy information sufficient to warrant a prudent person believing that the Plaintiff had committed or was committing an offense.

45.   Apple and SIS' accusation of Ousmane Bah as having stolen merchandise from their Boston, MA store was without probable cause, either knowingly false or made in reckless disregard for the truth or falsity of the allegation, as both Defendants had objective reasons to doubt the accuracy of the allegation,  and was therefore not subject to any qualified privilege.

## Face Recognition and Apple

46.     Face (or "facial") recognition describes a computer algorithm that compares facial images to determine whether they are the same person.

47.     Apple is an innovator in facial recognition technology ("FRT"). Its most advanced cellphones use facial recognition as a means of unlocking its smart phones, so a user need only show his or her face to its screen to unlock the device.  Apple calls this feature "Face ID."

48.     There is an enormous potential commercial market for the use of FRT in law enforcement and retail security. Law enforcement and retailers hope to use security cameras to record crimes and use FRT to quickly identify the offender based solely upon imaging, using central databases or other collections of images to connect an offender's photograph to a name with immediacy, so as to allow criminal identification and apprehension in near real-time.

49.     This effort to fight what is known in the industry as "organized retail crime" ("ORC") is aggressively dealt with in retail stores.  Upon information and belief, the impostor's picture and information were circulated among retail personnel via several alert-type systems like Crimedex and MetrORCA (both online mappable databases of retail crimes).

50.     Several of Apple's technology competitors have aggressively developed FRT as a product for sale to law enforcement as loss prevention methods or to identify unlawful actors via security cameras at businesses or on streets.

51.     However, FRT is not presently advanced enough to provide consistently reliable positive identifications, much less accurately identify Black individuals like the Plaintiff (as FRT has significant difficulty comparing darker skin tones).

52.     The NYPD also employs FRT to identify criminals.  The department conducting such analyses is called the Facial Identification Section ("FIS"), a division of the Real Time Crime Center.

53.     In part because FRT is presently unreliable, the NYPD's FIS Department has strict protocols regarding its use, including that if a search turns up multiple identities for the same facial image, electronic identification should not be re-run because the FIS information would not provide probable cause for arrest.

54.     As FRT is not sufficiently developed to provide positive identification, any current identification relying on this technology would lack probable cause, as it would

not be sufficient to warrant a prudent person to believe that the person identified through FRT was the one who had committed or was committing an offense.

55.     In addition to its leadership in FRT, Apple has used technological means to protect its products from store theft and shoplifting. Apple displays its products in stores without locks or tethers as a marketing strategy (because tethering products deters customers from playing or handling with devices and suppresses interest).  Since this lack of tethering increases the risk of theft, Apple has created geolocation sensors and software linked to its systems (known as "iBeacon") to detect when a product has left its store without authorization.

56.     Given Apple's use of technology to attempt to deter or prevent store theft; its status as a leader in FRT; and substantial business and law enforcement interest in the use of facial recognition for crime deterrence as well as loss prevention, it seems unlikely that Apple would not adapt its facial recognition product for commercial use (perhaps under a different name than "Face ID") in its stores.

57.     As noted above, at the time of the Boston theft, Apple and SIS possessed images of the Connecticut offender from security video and used the images in some fashion to identify Mr. Bah as the thief to Boston Police.

58.     As also noted, the identification of Mr. Bah by telephone after the Boston theft, based upon imaging and live evidence gathered in New Jersey and Connecticut, occurred less than 10 minutes after the theft, and an even shorter interval after the thief exited the store.

59.     Somehow, during that  brief interval, Apple staff and SIS personnel identified that merchandise had been stolen from their store; traced the missing merchandise to an individual depicted on store video and watched the theft's occurrence; and then connected that individual with a theft a month earlier at a Connecticut Apple store — all while continuing to serve and observe numerous customers in its ordinarily busy Boylston Street store.

60.     The speed with which Apple and SIS personnel related the image of the (wrongfully identified) Boston thief to the (wrongfully identified) Connecticut thief, virtually in real time, strongly suggests that Apple, SIS, or both used FRT as an aid in its "positive" identification of the thief as Ousmane Bah.

61.     As discussed below, the New York Police Department represented to Bah or Bah's representatives that Apple or SIS used some form of FRT to identify Bah as the thief in New York.

62.    Based upon these inferences, Plaintiff, upon information and belief, represents that either Apple and/or SIS utilized FRT as a substantial part of its identification of the Boston thief as Ousmane Bah, based upon its association of Bah's name with the image of the Connecticut thief, who was the same individual as the impostor in Boston.

63.    Apple and/or SIS knew or should have known that FRT was an unreliable basis for identifying a thief from security video, and their use of the technology, if occurring, to identify a thief as Bah from a security video was too unreliable to reasonably claim that Bah had committed a crime, especially as it was also derived from an inaccurate and unreliable association of Bah's name to the video from a temporary learner's permit without a picture.

### Apple's Failure to Produce Exculpatory Video in Boston and Other Jurisdictions

64.    In June 2018, Plaintiff Ousmane Bah appeared in Boston Municipal Court and was represented by counsel.  Mr. Bah's attorney requested the video evidence from the Boston thefts (committed by the impostor, whom Apple and SIS had named "Ousmane Bah") to demonstrate that Bah did not commit them.  This request was relayed by the Suffolk County (MA) prosecutor to Apple.

65.    Shortly thereafter, Apple advised the prosecutor that the video evidence of the impostor, which would have completely exculpated Ousmane Bah, had been routinely deleted.

66.    Months after these requests, in connection with Plaintiff's charges, an Apple employee forwarded to the prosecutor a video of another individual, a second thief named Boubakar Toure, who allegedly committed shoplifting in Boston in conspiracy with the impostor, in response to a subpoena.  Boubakar Toure was not the impostor, did not resemble the impostor, and did not resemble the Plaintiff. *See Email and still image from video, Exhibit 2.*

67.    Both Apple and SIS knew that this second thief was not the Plaintiff and that his name was Boubakar Toure, as he had been apprehended in a prior theft in Greenwich, CT.

68.    However, neither SIS nor Apple explained that the video that they had produced in response to the Plaintiff's Boston subpoena and the Boston District Attorney's request was of a separate thief.

69.   Defendants offered no explanation as to why a video taken of a second thief at the Boston store from the date of the complained of incident had been preserved while the video of the impostor had been allegedly erased or destroyed.

70.   Apple and/or SIS failed to provide to police, prosecution or the Plaintiff  the video evidence of the impostor's theft and reported that the video of the thefts was "routinely" erased, despite their continued interest in erroneously prosecuting Bah as a thief.

71.   At or around this time, police departments in Paramus, Rockaway, Millburn, and Cherry Hill, NJ, were also repeatedly requesting video evidence for the alleged thefts promised by Apple and SIS.

72.   Like the destroyed Boston video, each of these New Jersey videos would have provided exculpatory evidence showing that Ousmane Bah did not commit the alleged thefts, which Apple either intentionally or recklessly allowed to be destroyed or erased.

73.   However, as with the Boston video, Defendants Apple and/or SIS, whether intentionally or carelessly, also "deleted" the Rockaway theft video, and represented that they were deleted as part of routine policy by Apple stores.

74.   As recited in the procedural statement, litigation concerning these allegations has already commenced in New York.  In response to a discovery order in the Southern District of New York, both Apple and SIS affirmatively represented to the Southern District of New York that they have no written policy regarding the retention of store surveillance video, which was confirmed by defense counsel.

75.   The production of evidence absolving Ousmane Bah as a thief would have been an admission that Apple and SIS' claims that Bah had committed thefts in New Jersey were false, exposing them to potential civil and criminal liability for filing false complaints.

76.   Such deletion – amounting to spoliation of exculpatory evidence of a criminal charge – is further evidence of the Defendants' reckless disregard for the truth or falsity of the charges made against the Plaintiff.  Moreover, the Defendants' selective deletion of the Boston and New Jersey videos – while preserving simultaneously recorded video of another thief *during the subject theft* – is additional evidence that Defendants' pursuit of the Plaintiff was either reckless or malicious.

77.   Worse, despite Apple's allegations at the time that the subject video had been deleted or destroyed, during discovery Defendants produced store video from the

Boston thefts which depicted the impostor whom they had claimed was the perpetrator of the Boston thefts  committing the complained of thefts.

78.    Apple's false allegations to prosecutors and the Plaintiff's attorney that the videos had been deleted is evidence of their reckless disregard of the truth in pursuit of prosecution of the Plaintiff.

## Additional False Charges in New Jersey

79.    On September 18, 2018, the impostor again committed theft at an Apple store, this time in Cherry Hill, NJ.  The theft was reported to the Cherry Hill Police Department by Rakia Morgan, an SIS employee.

80.    At that time, Morgan, on behalf of SIS and Apple, and in reliance upon the reckless misidentification of the impostor as Ousmane Bah by SIS in Paramus NJ, falsely advised the Cherry Hill Police Department that the individual who committed the Cherry Hill theft was the Plaintiff, Ousmane Bah. Morgan further indicated that she would return to the Cherry Hill Police Department to "sign charges against Bah" and, once again, would provide the police with security video of the thefts.

81.    On September 18, 2018, the impostor committed multiple thefts of merchandise from an Apple store in Freehold, New Jersey. The thief or thieves escaped and were not detained.

82.    Using the ungrounded identification that Apple and SIS derived from the Connecticut detention, the Paramus arrest, and/or the Boston theft and using imaging information from one or more of those events, all of which were in Apple and SIS' possession or control at the time, Defendants SIS and Apple again falsely and erroneously identified the impostor as Ousmane Bah, describing him as a "known thief" who committed multiple thefts throughout the Northeast.

83.    At this time, both Defendants were actually or constructively aware that SIS and Apple used a learner's permit without a photograph (whose description was at significant variance with that of the thief) to arrive at what it purported was a positive identification.

84.    On or about September 20, 2018, Steven Yhap, an SIS employee, acting on SIS and Apple's behalf, filed a police complaint falsely accusing Ousmane Bah of committing a theft in Freehold, NJ.  Once again, Yhap promised to provide the police with security video showing the theft in progress.  Once again, the video evidence was not produced to police.

85.   The Freehold theft was committed by the impostor, whom Yhap once again falsely identified as the Plaintiff, Ousmane Bah.

86.   Yhap filed the criminal complaint for the Freehold thefts with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

87.   The police report filed by Yhap on behalf of SIS and Apple was without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was unreliable at the time that Yhap signed it, and therefore their accusation lacked reasonably trustworthy information sufficient to warrant a reasonably prudent person to believe that the plaintiff had committed or was committing an offense.

88.   The Freehold and Cherry Hill charges were a direct and proximate result of the reckless identification and false accusations stemming from the Paramus thefts, and the criminal charges filed against Plaintiff in that jurisdiction were without probable cause.

89.   Apple and SIS' claim to Freehold law enforcement that Mr. Bah had committed the alleged theft was made with reckless disregard of its truth or falsity, and was therefore not subject to privilege.

### The Impostor Exposed in Manhattan

90.   During the ensuing months, the impostor attempted to pass himself off twice in New York during traffic offenses as the Plaintiff.  In both cases, the arresting officer saw through the ruse and charged him for impersonation.  The arrests were recorded in the New York Police Department booking system.

91.   The arresting officer was able to identify the impostor as Mamadou Barrie, a friend of the Plaintiff, who apparently stole the learner's permit from the Plaintiff.  These arrests specifically noting that Barrie had pretended to be Ousmane Bah.

### An Additional Theft Charge in Trumbull, CT

92.   On October 28, 2018, Apple employee Joe Carpenter called the Trumbull, CT police department and alleged that "Ousmane Bah" had stolen from Apple's store in Trumbull. Carpenter, relaying information from SIS' Global Security Operations Center, an information clearinghouse maintained by SIS.

93.   Relying upon SIS' GSOC records which held false identification of the thief as Ousmane Bah in Paramus, Carpenter claimed that Bah had been arrested in New Jersey and identified as a thief committing shoplifting in numerous stores in Connecticut, which had previously been attributed to an unknown thief.

94.   Carpenter's allegation was reckless, false, and misleading, and based upon SIS' erroneous and reckless identification of Ousmane Bah as the thief in Paramus, NJ.

95.   Carpenter's allegation was defamatory and intended to induce prosecution of Bah in Trumbull, CT.

96.   Subsequently, Ousmane Bah was charged without probable cause with the Trumbull thefts, based solely upon the information provided to the Trumbull police by SIS as to the identity of the thief.

## The Rockaway, NJ Theft

97.   On October 18, 2018, the impostor committed shoplifting at an Apple store in Rockaway, NJ, detected again by review of store video by SIS employee John Woodruff, a so-called "loss prevention specialist" who provided security at the Rockaway store.

98.   Apple, or SIS operatives on Apple's behalf,  reported the  theft, as well as the prior Boston and New Jersey thefts, to SIS' "Global Security Operations Center" ("GSOC"), SIS' central database maintained at SIS' headquarters in California.

99.   SIS, on behalf of Apple, maintained a database of information tying the Plaintiff, Ousmane Bah, to thefts in multiple states through this central hub, with the expectation that it would influence events in other jurisdictions contiguous to where thefts occurred, including information concerning the New Jersey thefts.

100.   Woodruff, on behalf of Apple, in reliance on the recklessly false identification of Ousmane Bah as the impostor from the Paramus, NJ arrest, as well as the other false charges filed by Defendants in other locations,  advised the Rockaway (NJ) Police Department that Bah was the thief and induced the officers to file charges of felony theft against the Plaintiff.

101.   As with the Paramus, Millburn, and Cherry Hill thefts, Defendants Apple and/or SIS represented to the respective police departments that they possessed store

video of the thefts and would provide copies of the video to the respective departments.

102.    However, once again, Defendants Apple and/or SIS, whether intentionally or carelessly, deleted the Rockaway theft video, while falsely alleging to the police that the videos had been deleted as part of Apple or SIS' fictional "policy or routine" deletion of security video from stores.

103.    Such deletion, while Defendants simultaneously preserving other video evidence for even longer periods, is further evidence of the Defendants' reckless disregard for the truth or falsity of the charges made against the Plaintiff.

**SIS' Direct Involvement in the NYPD's
Investigation of NY Thefts**

104.    On October 22, 2018, the impostor committed another theft at an Apple store, this time in Staten Island, NY.  While the store captured security imaging of the thief, the identity of the thief was purportedly unknown to the Staten Island store or its personnel.

105.    On October 24, 2018, the impostor struck again, stealing additional merchandise from the Staten Island store.

106.    Subsequently, on November 8, 2018, Det. John Reinhold of the NYPD submitted a request for information to identify the New York thief by publishing a flyer describing the theft and including a captured image from the security video showing the thief that was published via a reporting service used by the NYPD called "MetrORCA."

107.    In November 2018, Det. Reinhold submitted a request to the NYPD's Facial Identification Section (FIS), which  identified the photograph as potentially depicting two people, one of whom was purportedly Ousmane Bah – and the other was the actual thief, Mamadou Barrie.   However, New York's FIS policy explicitly states that such automated identification is not sufficiently reliable to provide probable cause for arrest.

108.    On November 15, 2018, Woodruff, using the address provided in the MetrORCA bulletin, emailed Det. Reinhold and advised him that Apple and SIS had identified the Staten Island thief as Ousmane Bah, further falsely representing that Bah "had been hitting Apple stores for quite a few months now and doesn't seem to be

stopping," naming the Plaintiff as the impostor who had committed robberies of Apple stores in multiple states throughout the Northeast.   Email, *Woodruff to Reinhold, Exhibit 3.*

109.   Woodruff's allegations were false and misleading, and based upon reckless misidentification of the impostor as Ousmane Bah.

110.   Woodruff, on behalf of SIS and Apple, provided information concerning the New Jersey and other thefts and naming of the Plaintiff with the expectation that it would have consequences for Ousmane Bah in New York.

111.   In reliance upon Apple and SIS' representation,  Det. Reinhold made a finding of "probable cause" and authorized Ousmane Bah's arrest.

112.   Apple and SIS' accusations that Ousmane Bah committed the New York thefts were knowingly false and/or made with reckless disregard for the truth or falsity of their allegations, and were therefore not subject to any qualified privilege.

## The New York Arrest

113.   On November 29, 2018, at approximately 4 AM, in reliance upon the false identification provided by Apple, SIS and, through SIS, the Paramus Police Department, and using the warrant issued without probable cause by Detective Reinhold, an unidentified officer or officers of the NYPD acted upon Apple's criminal complaints and came to Mr. Bah's family home to arrest him for the New York thefts.

114.   The warrant issued for Bah's arrest contained the photo of the impostor (now known to be Mamadou Barrie).  As stated above, Barrie in no way physically resembles the Plaintiff, other than being Black.

115.   At the time of the arrest, NYPD officers acknowledged the inconsistency between the warrant's photograph and the Plaintiff, but nevertheless handcuffed him at his home in front of his mother, father, and brother, took him into custody, and brought him to the Staten Island precinct.

116.   At the time of the arrest, Mr. Bah was still being wrongfully prosecuted in Boston Municipal Court for the Boston thefts.

117.   Further,  based upon Apple's false representation concerning destruction of the Boston security video to his counsel, believed that the one piece of evidence

definitively absolving him of these thefts had been destroyed by Apple. This misrepresentation further increased Mr. Bah's fear and stress.

118. Moreover, at the time of the arrest, Mr. Bah was aware that he had been allowed to leave Massachusetts on his own recognizance, but that occurrence of any other crime might lead to violation of the terms of his release and incarceration either in New York or Massachusetts while awaiting trial.

119. In addition, at the time of the arrest, Mr. Bah was aware that the felony charges issued against him in Massachusetts and New York could lead to his removal from the United States, the only home he has ever known, by being handed over to Immigration and Customs Enforcement and USCIS.

120. After being taken to a New York City precinct, Det. Reinhold advised Mr. Bah that Apple's imaging of the New York thief did not match his appearance and released him, subsequently dropping the charges.

121. Mr. Bah was further advised by Det. Reinhold that it was likely Mr. Bah was incorrectly identified based upon a facial recognition system utilized by Apple or SIS.

122. The NYPD arrest and detainment were without probable cause and induced by the misidentification of Bah as a thief by Steven Yhap (in Paramus, NJ), John Woodruff (through his direct communication with the NYPD concerning the Staten Island thefts), SIS, and Apple, the destruction of exculpatory evidence in New Jersey by Apple and SIS, and false representations of destruction of exculpatory evidence in Massachusetts.

123. Upon information and belief, subsequent to Bah's arrest and release in New York, it is likely that SIS and/or Apple knew that the Plaintiff had been arrested; that he was neither the Staten Island thief nor the impostor at other Apple stores; and that the NYPD had released the Plaintiff after comparing the video imaging from the Staten Island theft to the Plaintiff being held against his will in the police station.

124. Although SIS and/or Apple by this time likely had actual notice that the person whom they had accused of theft was not the actual thief, SIS and Apple continued to prosecute Ousmane Bah for the Paramus, NJ theft; the Greenwich, CT theft; the Boston, MA theft; the Rockaway, NJ theft; and the Cherry Hill, NJ theft, and left "BOLO" advisories linking the impostor's picture to Mr. Bah's name pending without retraction.

125.    SIS and Apple's continued active seeking of these charges with knowledge of the misidentification, as well as their collective failure to withdraw BOLOs to their employees or Apple employees, or police departments, not only represented malicious prosecution of the Plaintiff, but also evidence of their reckless disregard for the accuracy of these accusations.

### The Holyoke Theft and Arrest:  The Impostor Exposed

126.    On December 1, 2018, a mere two days after the NY arrests conclusively demonstrated that Bah was not the impostor committing numerous thefts at Apple stores, SIS employees apprehended the impostor attempting to steal merchandise in Holyoke, MA from Apple's store.

127.    At this point, when SIS likely had actual notice that the impostor was not the Plaintiff, the SIS agents continued to recklessly misidentify the impostor as Ousmane Bah, this time to Holyoke police, again defaming the Plaintiff.

128.    This false identification occurred, in part, not only through SIS' recklessness in initially misidentifying the impostor, but through its reckless failure to correct the misidentification .

129.    Upon information and belief, despite its notice that Bah was not the thief who committed multiple shoplifting crimes at Apple stores, SIS failed to update its Global Security Operations Center ("GSOC"), was maintained to provide centralized and immediate information to SIS loss prevention specialists and law enforcement., with this information, which directly led to the thief being misidentified by SIS personnel to Holyoke police.

130.    This failure to update its central information depository constitutes further evidence of SIS' reckless disregard of the truth of the allegations it had made against the Plaintiff, and therefore vitiates any claim of qualified privilege which may be asserted by SIS. its

131.    The Holyoke Police fingerprinted its suspect and forwarded the data to the FBI's National Criminal Identification Center ("NCIC"). The prints disclosed that the impostor was not Ousmane Bah, but Mamadou Barry (or "Barrie").

132.    As noted above, New York's FIS process had identified Mamadou Barry or Barrie as being one name for the individual who committed the Staten Island thefts. However, this conflicting identity was disregarded by Det. Reinhold in issuing the arrest warrant for the Staten Island thefts and in causing Mr. Bah to be detained.

133. The Holyoke Police extradited Mamadou Barry as "Ousmane Bah" to New Jersey for outstanding warrants, due to the identification of the thief as Bah by SIS representatives.

134. Barry was, in fact, at least one of the thieves involved in each of the above-named shoplifting incidents at Apple stores and was the individual whom SIS and Apple had repeatedly, recklessly, and falsely identified as Ousmane Bah.

135. Defendants' representations that the Plaintiff was thief in Holyoke – after the New York arrests definitely established the Plaintiff's innocence – provides further evidence that these accusations were made with reckless disregard for the truth or falsity of their accuracy, and with no regard for the continuing damage caused to the innocent Plaintiff.

136. During this time frame, the prosecution of the Plaintiff for the Boston theft was continuing and not withdrawn by the Defendants, again demonstrating that the allegations against the Plaintiff were with reckless of their truth or falsity.

## The Freehold, NJ Theft

137. On December 6, 2018, less than two weeks after conclusively learning that Bah was not the thief shoplifting from its stores, Mr. Bah received by mail notice of a warrant in the Freehold County District Court for his arrest for the Freehold thefts, based upon the false accusations made by Apple and/or its agent, SIS, to the Freehold, NJ police.

138. At the time this notice was served on Bah, Apple and/or its agent, SIS, had actual or constructive knowledge of the Connecticut detention; the Paramus, NJ theft and detention; the Boston, MA theft and prosecution; and the Staten Island, NY arrest and release of Mr. Bah based upon Apple's false identification of Mr. Bah as the thief that had committed each of these criminal events.

139. At the time of Bah's receipt of this notice, further, Apple and/or its agent, SIS, had actual or constructive knowledge that Mr. Bah was innocent of each of these thefts, and that it had wrongfully charged Mr. Bah with theft in multiple states based upon false and objectively unreliable identification information.

140. At the time of Bah's receipt of this notice, Apple and its agent, SIS, also had actual or constructive knowledge that they had in their possession or control imaging evidence clearing Mr. Bah of its accusations of thefts and pending prosecutions against Bah in Massachusetts, Connecticut, and New Jersey.

141. However, even with this knowledge, both Apple and SIS continued in their prosecution of the Plaintiff in Massachusetts and New Jersey.

142. On December 12, 2018, SIS loss prevention specialist Rakia Morgan appeared in the New Jersey State District Court in Cherry Hill, NJ to continue to press Apple and SIS' criminal charges from thefts in Cherry Hill against Ousmane Bah, despite SIS' knowledge that the charges were false and based upon reckless misidentification.

143. When Morgan appeared in Court, however, yet another individual appeared in response to the Summons. This individual's identity was verified by photo identification as Ousmane Bah, a resident of Willingboro, New Jersey. He was not the Cherry Hill, NJ thief. The Court dismissed the charges against Bah.

144. The Cherry Hill prosecution, with knowledge that the thief was not Ousmane Bah, and with process issued against *yet another individual with that same name*, is further evidence of Apple and SIS' recklessness in seeking such arrest and prosecution.

145. SIS employee Rakia Morgan immediately advised SIS' Global Security Operations Center ("GSOC") that the thief whom SIS had identified (in sworn warrants seeking prosecution) as Ousmane Bah was not, in fact, the Plaintiff. Copied on this notice was John Woodruff, the so-called "loss prevention specialist" in Rockaway, NJ who falsely advised the NYPD that Bah was a shoplifter.

146. During this period, the prosecution of the Plaintiff for the Boston thefts and remaining New Jersey thefts continued, and were not withdrawn by either Defendant.

## Continued Prosecution of Mr. Bah in Multiple States

147. These actions are further evidence of Apple and SIS' reckless disregard for the truth or falsity of charges against Ousmane Bah in presenting, and failing to withdraw, the false and misleading charges in Massachusetts, as well as their defamatory statements from Connecticut.

148. Upon information and belief , Apple and SIS had actual knowledge by report from New York as early as November 2018 that the person that they had identified as committing shoplifting at their stores was not the Plaintiff.

149. Further, SIS and Apple knew directly by mid-December 2018 that the person that they had identified as the thief was not the Plaintiff.

150.  After the New York arrests, both Defendants were under an affirmative duty to disclose to law enforcement officials in Massachusetts that the prosecutions against the Plaintiff were invalid and without probable cause, and that the criminal cases against Bah should be dismissed.

151.  However, both Defendants allowed prosecutions against Bah to continue through June 2019, including matters in Lawrence, NJ; Boston, MA; Greenwich, CT; and Holyoke, MA.

152.  By January 2019, Apple and SIS were constructively aware of multiple individuals with different appearances, all of whom were described as or whose images were produced in response to charges against "Ousmane Bah," including:

1)  the Plaintiff, Ousmane Bah, who responded to the description in the temporary learner's permit;

2)  the impostor, Mamadou Barrie, who had claimed to be "Ousmane Bah" but did not meet such description;

3)  "Ousmane Bah," a Black male who had committed shoplifting in Apple's Montreal, Canada store;

4)  Boubakar Toure, the second Black male who committed shoplifting on May 31, 2018 at the Boston Apple store, whose video Apple forwarded to Massachusetts prosecutors concerning the Boston charges; and

5)  an Ousmane Bah residing in New Jersey who responded to the warrant issued for the Cherry Hill thefts.

153.  As mentioned previously, in January 2019, without comment and in response to the September 2018 subpoena issued by Mr. Bah's counsel for the Boston charges, Apple produced to Suffolk County, Massachusetts prosecutors the aforementioned security video showing Boubakar Toure in the Boston store at the time of the Boston thefts.

154.  Although neither Apple nor SIS said anything about the inconsistency – such as warning the prosecution that they had the wrong person and the charges should be dismissed – the Boston criminal charge, which had been pending for eight months, was *nolle prossed* by the Massachusetts Assistant District Attorney.

155.  However, SIS and Apple took no steps to further this result.  Neither SIS nor Apple ever apologized to Bah; explained or apologized for the false charge of felony theft

filed by SIS as Apple's agent; or apologized for or explained its false representation that the exculpatory video had been withheld or presented as destroyed.

### Continued Reckless Disregard and Malicious Prosecution of Plaintiff

156. This matter was initially commenced in the Southern District of New York in April 2019, captioned *Bah v. Apple et al*, index number 1:19-cv-3539. Defendants immediately conferenced this matter and sought its dismissal. After letter conferencing and the filing an Amended Complaint in the Southern District of New York, the Court scheduled this matter for an initial conference.

157. Within three days of Plaintiff filing the initial Complaint in this matter, the NYPD located and arrested the impostor, Mamadou Barrie.  Both Apple and SIS were aware of this arrest and Barrie's subsequent prosecution.

158. The Court held a preliminary hearing concerning the Defendants' request for dismissal in the Southern District of New York on June 18, 2019.  Apple and SIS, through counsel, were advised that the pending false charges had imperiled the Plaintiff's pending application for permanent US citizenship. Accordingly, the Court directly ordered SIS and Apple to identify to the Court and to the Plaintiff all jurisdictions in which they had alleged that Ousmane Bah had committed theft by letter by the end of June 2019.

159. Further, even after filing of the civil complaint in the Southern District of New York, as late as June 2019, Steven Yhap, on behalf of SIS and Apple, appeared in court in Lawrence, NJ, intent on prosecuting Plaintiff for the Paramus, NJ thefts, even though by this time Bah was known with certainty not to be the Paramus thief.  When confronted by Bah and his attorney in Paramus, Yhap dismissed the Paramus complaint.

160. Moreover, said Defendants withheld this information from the Paramus Police Department and the Court until June 2019, even after they had been sued in the Southern District of New York concerning these allegations and instructed by the Court to disclose to Plaintiff's counsel in this action all instances in which SIS had alleged that Ousmane Bah had committed shoplifting.

161. In support of a Motion to Dismiss in the Southern District of New York based upon a claim of lack of personal jurisdiction, Defendant SIS' Vice President submitted an Affidavit asserting that no SIS employee had ever identified the Plaintiff to the New York Police or to Apple. *See Affidavit of Thomas Stevens, SIS, Exhibit 4.*

162.   However, as the allegations in this Complaint make clear, this affidavit was entirely false, and known to be false to the affiant at the time it was submitted.  *See email of John Woodruff to Detective Reinhold, New York Police Department, Exhibit 3.* As noted above, SIS employee John Woodruff specifically advised a NYPD detective that the Staten Island thief was "Ousmane Bah" by an email in mid-November 2018, less than a year prior to the affidavit's filing.

163.   This false affidavit in the New York litigation, submitted to the Court in the context of a dispositive motion, is further evidence of SIS and, through SIS as its agent, Apple's reckless disregard for the truth or falsity of allegations concerning these incidents, and therefore of the absence of qualified privilege for any of their allegations.

164.   Prior to the events the Plaintiff, who was a lawful resident in the United States, had applied for U.S. Citizenship.  The  numerous charges initiated by Defendants against Bah in multiple states resulted in Mr. Bah's citizenship application initially being denied, after which he was forced to undergo a months-long appeals process fraught with uncertainty and repeated explanations as to why his previously clean criminal record was now replete with allegations of multiple  felony thefts in several different states.

165.   Mr. Bah was an honors student at the Bronx Latin School with no criminal record prior to the events complained of and was in the United States pursuant to a valid permanent resident permit.  It is likely, therefore, that without the complained-of events, his application would have been routinely  allowed at its initial stage.

166.   The numerous false accusations of Bah as a thief, and the numerous criminal charges resulting from them, have injured Plaintiff; affected his ability to find work; and will likely result in further economic damages, as well as significant emotional distress and injury.

## COUNT I
## Defamation – Apple

167.   Apple and SIS (as Apple's agent), individually and in conspiracy together, as described above, made untrue statements, both orally and in writing, accusing the Plaintiff of committing crimes in seventeen separate instances over a period of nine months, including using information recklessly and unreliably obtained in New Jersey to accuse the Plaintiff as a thief in New York to the NYPD, which directly led to the Plaintiff's wrongful arrest and detention, as well as to the charges in Massachusetts.

168.   These false statements were published to Apple and SIS retail and law enforcement personnel in Massachusetts, Connecticut, Pennsylvania, New Jersey, and New York, as well as to other third parties.

169.   These cumulative misidentifications built upon themselves, creating the impression to law enforcement officials that the Plaintiff was a serial offender operating throughout the northeast United States, and created a sense of urgency to promote his arrest and detainment.

170.   Apple and SIS' loss prevention and investigation practices falsely identifying the Plaintiff as the individual who committed thefts in Boston and Holyoke, MA, including their:

- reckless procurement and publication of incorrect, misleading, and false charges against an innocent man;

- failure to advise law enforcement of inconsistent and exculpatory information;

- reliance upon documents which, on their face, stated that they could not be used to identify anyone;

- disregarding conflicting evidence between the physical description of Bah on the temporary learner's permit and the physical characteristics of the actual thief;

- repeated false accusations based upon patently unreliable information, to the point of swearing out warrants naming Mr. Bah as a thief when Apple and SIS had irrefutable proof that their evidence naming Bah as their shoplifter was not true;

- failing to preserve and disclose exculpatory video;

- conducting of a criminal investigation of store thefts without following established principles of investigation; and

- failure to withdraw or correct BOLO bulletins circulated by Apple and SIS

were, individually and collectively, objectively unreasonable, reckless, and occurred without regard to the truth or falsity of claims made against Mr. Bah.

171.  The false accusations that Bah was a thief were published orally and in writing to third parties and were not limited to law enforcement.

172.  Such public comments were both oral and in writing, and were slander and libel *per se,* and injured the Plaintiff's reputation.

173.  The reckless investigations and accusations of Apple and SIS in these multiple events directly and proximately resulted in the false accusations made by both Defendants in Boston, MA and Holyoke, MA by the Defendants.

174.  As stated above, Mr. Bah was significantly injured as a result of these reckless actions.  He was made subject to criminal process, shackled and deprived of his freedom, publicly embarrassed, and has suffered significant psychological harm with physical manifestations, including insomnia, depression, exhaustion, and continual anxiety as to what effect these repeated false charges will have on his record and whether they will interfere with his post-college employment and career.  He lives in continuing fear that additional false charges will be made against him and that he might again be apprehended without cause, perhaps even being forced to leave the country.

175.  Mr. Bah has and continues to suffer from damage to his personal reputation as a result of the Defendants' false accusations.

176.  Mr. Bah has lost, and will continue to lose, employment opportunities as a result of the false charges made by Apple and SIS in Massachusetts and other states, as a result of its reckless allegations concerning these thefts.

177.  Further, as noted above, Defendants' false accusations in Massachusetts, and claims of criminality in Boston and Holyoke made against the Plaintiff, was , along with the false charges in other states, a substantial contributing cause for the initial denial of Mr. Bah's application for United States' Citizenship was initially denied, as well as an appeal initially denied.  Given the heated climate concerning immigration in 2018, 2019 and 2020, his uncertain immigration status created extreme emotional distress for the Plaintiff.

178.  There is a direct nexus between the Defendants' actions defaming the Plaintiff in Massachusetts and his complained of injuries.

## COUNT II
## Defamation  – SIS

179.  Plaintiff repeats the above allegations and incorporates them herein by reference.

180. SIS, individually and as an agent and in concert with Apple, as alleged above, made repeated false statements accusing the Plaintiff of multiple crimes and published said statements to its own personnel, to Apple employees, and to law enforcement personnel in multiple states, and specifically in Massachusetts.

181. The untrue representations made orally and in writing by SIS (individually and as Apple's agent) were false and inaccurate.

182. The untrue representations were both slanderous and libelous, and injured the reputation of the Plaintiff.

183. As alleged above, these false statements were published with reckless disregard to their truth or falsity, and are not subject to privilege under the laws where each false statement was published.

184. SIS' accusations and representations that Mr. Bah had committed a crime each and collectively constituted defamation *per se* (specifically, false allegations of a criminal act).

185. As a result of the defamatory actions of SIS, individually and in joint venture with Apple in Massachusetts, Plaintiff has suffered the injuries referred to in the above paragraphs.

## COUNT III
## Malicious Prosecution – Apple

186. Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

187. Apple, individually and in concert with SIS, owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

188. Apple, through its employees and through its agent for anti-shoplifting purposes, SIS, falsely accused Plaintiff of committing multiple crimes in Massachusetts, as stated above, with the intent and expectation that Plaintiff would be taken into custody, prosecuted, and punished therefor.

189. At the time of each of these accusations, Apple expected and intended that Defendant SIS act on its behalf and in furtherance of its business interests for

purposes of the criminal accusations, and in all such cases, SIS acted as Apple's agent.

190.     At the time that Apple and SIS, individually or collectively, accused Plaintiff of having stolen merchandise from their stores, as noted above, their accusations were with actual or constructive knowledge of their falsity and therefore lacked probable cause, as there was insufficient information to warrant a prudent person in believing that the Ousmane Bah had committed or was committing an offense.

191.     Apple and SIS knowingly or recklessly misrepresented the state of evidence in these prosecutions with actual or constructive notice that would tend to prove the innocence of Mr. Bah, whom they had falsely charged, and knowingly or recklessly withheld exculpatory evidence and information from the police and prosecution.

192.     As a result of Apple's malicious prosecution, repeated false criminal charges, and reckless disregard to the truth or falsity of the allegations it made against him in in Massachusetts, Mr. Bah has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunity  and significant stress, as well as physical sequelae from such emotional harm.


## COUNT IV
## Malicious Prosecution – SIS

193.     Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

194.     SIS, individually and as an agent and in concert with Apple, owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

195.     SIS falsely accused Plaintiff of committing a crime in Massachusetts, with the intent and expectation that Plaintiff would be taken into custody, prosecuted, and punished therefor.

196.     At the time SIS accused Plaintiff of having stolen merchandise from their stores, as noted above, their accusations were with knowledge of their falsity, and therefore lacked probable cause, as they lacked reasonably trustworthy information sufficient to warrant a prudent man to believe that the plaintiff had committed or was committing an offense.

197. Moreover, Apple and SIS, individually and in concert with one another, knowingly or recklessly misrepresented the status of evidence in these prosecutions with actual or constructive notice that it would tend to prove the innocence of Mr. Bah, whom they had falsely charged, and withheld exculpatory evidence and information from the prosecution.

198. SIS' actions constituted malicious prosecution of the Plaintiff, resulting in damage and injury to the Plaintiff.

199. As a result of SIS' malicious prosecution, repeated false criminal charges, and reckless disregard to the truth or falsity of the allegations it made against him in Massachusetts, Mr. Bah has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunity and significant stress, as well as physical sequelae from such emotional harm.

## COUNT V
### Intentional and/or Negligent Misrepresentation – Apple

200. Plaintiff reiterates the above allegations and incorporates them herein by reference.

201. Apple, individually and in concert with SIS, owed Ousmane Bah a duty to refrain from false or misleading representations concerning him, including false or misleading representations as to what evidence existed which either linked him to alleged criminality at Apple stores in Massachusetts or cleared him of such charges.

202. Apple's actions, directly and in concert with its agent, SIS, as described above, were in breach of their duty to the Plaintiff.

203. Apple's decisions not to correct such false representations were deliberately misleading, or recklessly so.  As a direct and proximate result of Apple's misrepresentations, Plaintiff Ousmane Bah suffered injury, as described above.

## COUNT VI
### Intentional and/or Negligent Misrepresentation - SIS

204. Plaintiff reiterates the above allegations and incorporates them herein by reference.

205. SIS, individually and in concert with Apple, owed Ousmane Bah a duty to refrain from false or misleading representations concerning him, including false or misleading representations as to what evidence existed which either linked him to alleged criminality at Apple stores in Massachusetts or cleared him from such charges.

206. SIS' actions, directly and in concert with its principal, Apple, as described above, were in breach of their duty to the Plaintiff.

207. SIS' representations concerning Ousmane Bah to law enforcement, prosecutors, defense counsel, and the Massachusetts District Court were not only false but either knowingly or recklessly so.

208. SIS' decisions not to correct such false representations were deliberately misleading, or recklessly so.

209. As a direct and proximate result of SIS' misrepresentations, Plaintiff Ousmane Bah suffered injury, as described above.

## COUNT VII
## Negligence - Apple

210. Plaintiff reiterates the above allegations and incorporates them herein by reference.

211. Apple owed the Plaintiff, Ousmane Bah, as with any member of the public, a duty to conduct reasonable inquiry concerning allegations of theft, to refrain from false or misleading accusations of criminality, to refrain from making false or misleading representations to law enforcement, and to affirmatively correct false or misleading information as Apple and its agent, SIS, became actually or constructively aware of its false or misleading character.

212. Apple's conduct in Massachusetts breached such duty.

213. As a direct and proximate result of Apple's breach of said duty, Plaintiff Ousmane Bah suffered injury, as described above.

## COUNT VIII
### Negligence – SIS

214.   Plaintiff repeats the above allegations and incorporates them herein by reference.

215.   SIS owed the Plaintiff, Ousmane Bah, as with any member of the public, a duty to conduct reasonable inquiry concerning allegations of theft, to refrain from false or misleading accusations of criminality, to refrain from making false or misleading representations to law enforcement, and to affirmatively correct false or misleading information as Apple and SIS became actually or constructively aware of its false or misleading character.

216.   SIS's conduct in Massachusetts, breached such duty.

217.   As a direct and proximate result of SIS' breach of said duty, Plaintiff Ousmane Bah suffered injury, as described above.

**WHEREFORE, Plaintiff demands that this Court:**

(1)   Enter judgment against the Defendants Apple and SIS, jointly and severally, in an amount which it finds just and equitable for the damages caused by such Defendants' tortious conduct **in Massachusetts** suffered by Plaintiff;

(2)   Order the Defendants Apple and SIS to refrain from further accusations of criminality against the Plaintiff;

(3)   Order Defendants Apple and SIS in equity to take such affirmative actions as necessary to expunge their false allegations against the Plaintiff wherever they may appear either in print or electronically, and to clear his name in any contexts where it is associated with the Defendants' allegations of criminality or criminal behavior;

(4)   Order the Defendants Apple and SIS, in equity, to publicly apologize to the Plaintiff for their tortious claims of criminality, and to publish such apology both in print and electronically in the jurisdictions where the claims were made;

(5)   Order that the Defendants Apple and SIS provide the means for an ongoing right of reply to contradict the false and defamatory representations concerning the Plaintiff and his alleged criminality, wherever they may appear;

(6) Order that Defendants Apple and SIS, in equity, provide a monitoring service on an ongoing basis for the protection of Plaintiff's reputation, including but not limited to proactive corrections of any false allegations of criminality;

(7) Award such other relief which this Court finds just and equitable.

PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ALLEGATIONS SO TRIABLE.

Plaintiff,
By his attorneys,

_____
Daniel Malis, Esq., BBO # 315770
MALIS|LAW
30 2nd Street
Cambridge, MA  02141
(617) 491-1099
daniel.malis@malislaw.com

Dated:  May 28, 2021

31