Julie O'Neill
Morrison & Foerster LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 648-4700
Facsimile:  (617) 830-0142
Email: joneill@mofo.com

Carrie H. Cohen (admitted *pro hac vice*)
Katie L. Viggiani (admitted *pro hac vice*)
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile:  (212) 468-7900
Email: ccohen@mofo.com;
        kviggiani@mofo.com

*Counsel for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OUSMANE BAH,<br><br>      Plaintiff,<br><br>  -against-<br><br>APPLE INC. and SECURITY INDUSTRY SPECIALISTS, INC.,<br><br>      Defendants. | Case No. 1:21-cv-10897-RGS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION FOR SANCTIONS** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ............................................ 3

    A.    Procedural Posture of Related Case. ...................................................................... 3

    B.    Plaintiff Knows, and Discovery in the New York Action is Dispositive, that Apple Has No Liability for Plaintiff's Name Being Associated With an Individual Who Stole Merchandise from Apple Retail Stores. ......................... 6

ARGUMENT ...................................................................................................................... 8

I.    SANCTIONS ARE WARRANTED BECAUSE PLAINTIFF'S CLAIMS ARE FRIVOLOUS AND BASED ON KNOWINGLY FALSE ALLEGATIONS. ................. 8

    A.    Rule 11 Was Enacted To Address Exactly This Type of Misconduct. ................. 8

    B.    Discovery in the New York Action Shows that Plaintiff Knows Apple Was Not At Fault For His Arrest. ....................................................................... 10

            1.    Plaintiff's Theory of Malice is Based on a Falsehood; Barrie Did Not Present Plaintiff's Identification to Apple. ...................................... 10

            2.    Plaintiff's Alternative Theory of Malice Also is Based on a Falsehood; Barrie Was the Sole Shoplifter Misidentified as Plaintiff. ................................................................................................. 11

            3.    Plaintiff's Final Theory of Malice Also is Based on a Falsehood; Plaintiff Knows That Barrie—Not Apple—Caused Plaintiff's Name to Be Linked to Barrie's Thefts. .................................................. 14

    C.    Plaintiff and His Counsel Purposefully Conceal Key Facts That Fatally Undermine Plaintiff's Claims. ........................................................................... 15

CONCLUSION .................................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*[Name Redacted – Victim/Plaintiff] v. Queenan*,
   12 Mass. L. Rep. 461 (2000)......................................................................................10

*Bay State Towing Co.* v. *Barge American 21*,
   899 F.2d 129 (1st Cir. 1990)........................................................................................9

*Chervin v. Travelers Ins. Co.*,
   448 Mass. 95 (Mass., 2006)........................................................................................10

*Clinton v. Jones*,
   520 U.S. 681 (1997)......................................................................................................8

*Cruz v. Savage*,
   896 F.2d 626 (1st Cir. 1990)........................................................................................9

*Kale v. Combined Ins. Co. of Am.*,
   861 F.2d 746 (1st Cir. 1988)........................................................................................8

*Muthig v. Brant Point Nantucket, Inc.*,
   838 F.2d 600 (1st Cir. 1988)........................................................................................9

*Navarro-Ayala v. Nunez*,
   968 F.2d 1421 (1st Cir. 1992)......................................................................................8

**Other Authorities**

Fed. R. Civ. P. Rule 11 ..................................................................................... *passim*

Defendant Apple Inc. ("Apple"), by and through its counsel, respectfully submits this memorandum in support of its motion for sanctions against Plaintiff Ousmane Bah ("Plaintiff") and his attorneys, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11").

## **INTRODUCTION**

Through this lawsuit, Plaintiff seeks to hold Apple responsible for his friend's unfortunate decision to falsely identify himself as Plaintiff when that friend was arrested for shoplifting from Apple retail stores, including a store in Paramus, New Jersey on May 24, 2018 (the "Paramus Theft").  That same friend—whom Plaintiff alleges to be Mamadou Barrie ("Barrie")—also stole merchandise from other Apple stores in Massachusetts and elsewhere. Barrie was not apprehended in real-time for many of those other thefts, but Apple's third-party security vendor—defendant Security Industry Specialists, Inc. ("SIS")—reviewed relevant surveillance videos or images and correctly determined that Barrie was the same person who had been arrested for the Paramus Theft.  SIS reported those other thefts, including from a store in Boston, Massachusetts on May 31, 2018 (the "Boston Theft"), to law enforcement and provided the same name (Plaintiff's) that Barrie had provided when he was arrested for the Paramus Theft.[1]  And even where Barrie was apprehended in real-time for thefts, his prior false impersonation of Plaintiff caused law enforcement to identify and book him under Plaintiff's name ("Ousmane Bah"), including when Holyoke, Massachusetts police arrested Barrie on December 1, 2018 for shoplifting from Apple's Holyoke store.

---

[1] The arguments made herein apply with equal force and effect to Barrie's thefts from Apple stores outside of Massachusetts for which Barrie was misidentified as Plaintiff although the Complaint appears to be limited to alleged conduct related to Barrie's thefts in Massachusetts. Moreover, as set forth in Apple's August 20, 2021 motion to dismiss the Complaint, all of Plaintiff's claims against Apple are deficient as a matter of law, regardless of whether the Complaint is limited to alleged conduct related to Barrie's Massachusetts thefts and regardless of whether Barrie was apprehended for the thefts in real-time.

While it is unfortunate that Plaintiff became linked to Barrie's thefts, Plaintiff and his counsel are well aware that the responsibility for that distressing outcome lies with Barrie, not Apple, which also was a victim of Barrie's misconduct.  Yet, instead of seeking relief from Barrie or even reporting him to authorities for his apparent identity theft, Plaintiff seeks to hold Apple liable for Barrie's actions.  And, in a misguided attempt to demonstrate liability as to Apple where none exists, Plaintiff and his counsel included in the Complaint myriad allegations that they know are false based on document discovery they either produced or received in a parallel action involving these same general events.  Accordingly, Plaintiff's and his counsel's filing of the instant lawsuit violates Rule 11(b)(3) of the Federal Rules of Civil Procedure and sanctions are warranted.

Apple recognizes that sanctions are an extreme remedy reserved for situations involving, for instance, egregious misrepresentations to the Court, but such circumstances are present here. As set forth below, this is not a case involving a party's good faith advocacy based on a reasonable belief that the allegations in the Complaint are true or may find evidentiary support after discovery.  Rather, Plaintiff and his counsel already have the benefit of such discovery in a related action pending in the United States District Court for the Southern District of New York and such discovery leaves no question that the allegations in the Complaint are false and that Apple has no liability for any damage Plaintiff may have suffered as a result of Barrie's conduct in Massachusetts (or elsewhere).

Plaintiff and his counsel have chosen to ignore the available evidence in favor of filing two additional lawsuits against Apple related to Barrie's thefts in jurisdictions outside of New York, including the instant action which asserts allegations Plaintiff and his counsel know to be false.  In doing so Plaintiff and his counsel run afoul of Rule 11(b)(3)'s requirement that parties

conduct a reasonable inquiry and form a reasonable basis for claims before filing a lawsuit. *See* Fed. R. Civ. P. 11(b)(3). Such misconduct presents the quintessential—if rare—case for sanctions, which Apple respectfully requests in order to reimburse Apple for its attorneys' fees and costs incurred in moving to dismiss Plaintiff's claims and to deter parties from wasting the Court's valuable resources adjudicating claims that a claimant knows do not—and will not—have a scintilla of evidentiary support.[2]

## **RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**[3]

**A. Procedural Posture of Related Case.**

This is the third lawsuit Plaintiff has filed against Apple and its third-party security vendor, SIS, related to Barrie's thefts and the history of the two related lawsuits is instructive here. Plaintiff filed his first case against Apple and SIS on April 22, 2019 in New York, originally seeking more than $1 billion in damages. (*See Bah v. Apple Inc., et al.*, 19-cv-03539 (PKC) (S.D.N.Y., filed Apr. 22, 2019) (the "New York Action").)

In his original New York complaint, Plaintiff falsely alleged that Apple misidentified Plaintiff as a shoplifter in connection with numerous thefts[4] using facial recognition technology

---

[2] Apple sought to avoid adjudicating this sanctions motion and served Plaintiff and his counsel a nearly identical version of this memorandum and all supporting motion papers on July 12, 2021 and asked Plaintiff to withdraw the Complaint as to Apple before Apple moved to dismiss the Complaint in this action, in accordance with the 21-day safe harbor period set forth in Rule 11(c)(2) of the Federal Rules of Civil Procedure. Plaintiff, however, refused to withdraw the Complaint as to Apple.

[3] All of the exhibits, comprising SIS's incident reports and police reports and files, were produced during discovery in the New York Action and are subject to the protective order that the Court entered in that case on April 30, 2020. (New York Action, SDNY No. 19 Civ. 03539, ECF No. 65.) Therefore, Apple has partially redacted the exhibits, where appropriate, so as not to disclose personally identifiable information and confidential proprietary information.

[4] As in the New York Action, in the instant action Plaintiff alleges that Barrie committed the Paramus Theft on May 24, 2018 and stole merchandise from Apple stores in April 2018 in Greenwich, Connecticut (the "Greenwich Theft") (Compl. ¶¶ 11-12); on May 5, 2018 in Short Hills, New Jersey (the "Short Hills Theft") (*id.* ¶ 27); on May 31, 2018 in Boston, Massachusetts

that Plaintiff claimed "scans consumers' faces to look for matches to a list of suspects." (*See* the New York Action, ECF No. 1 at n.5.) Those allegations were false and had no reasonable basis, such that it is reasonable to conclude that Plaintiff made the allegations with the bad faith intention to generate negative publicity about Apple (which they did) and perhaps induce Apple to pay significant damages to settle the case (which Apple refused to do, given the untrue and frivolous nature of the claims). Plaintiff's improper motives are even more transparent in hindsight, now that Plaintiff has admitted to knowing the actual shoplifter (Barrie) and how and why Barrie was misidentified as Plaintiff, namely, because Barrie impersonated Plaintiff to law enforcement, not because Apple was "scanning" customers' faces to detect shoplifting—which Apple absolutely does not do—or took any other action that plausibly could lead to liability.

While Plaintiff withdrew most—but not all—of his false allegations about facial recognition technology when he amended his complaint in the New York Action, he nevertheless continued to assert meritless claims in that case based on allegations he and his counsel knew to be false. Specifically, in his first amended complaint in the New York Action, Plaintiff asserted claims against Apple for intentional or negligent infliction of emotional distress, defamation, malicious prosecution, and a civil rights violation under Massachusetts state law, alleging that Apple acted maliciously because it had misidentified two visibly distinct shoplifters as Plaintiff. (*See* New York Action, ECF No. 24-1, ¶¶ 22-25.) Apple moved to dismiss all these claims for

---

(*id.* ¶ 29); on September 18, 2018 in Cherry Hill, New Jersey (the "Cherry Hill Theft") (*id.* ¶¶ 79-80); on September 18, 2018 in Freehold, New Jersey (the "Freehold Theft") (*id.* ¶ 81); on October 1[7], 2018 in Rockaway, New Jersey (the "Rockaway Theft") (*id.* ¶ 97); on October 2[7], 2018 in Trumbull, Connecticut (the "Trumbull Theft") (*id.* ¶ 92); on October 22 and 24, 2018 in Staten Island, New York (the "Staten Island Thefts" and the only remaining actionable thefts in the New York Action) (*id.* ¶¶ 104-05); and on December 1, 2018 in Holyoke, Massachusetts (¶ 126.) (collectively, the "Relevant Thefts"). The Boston and Holyoke Thefts are referred to herein as the "Massachusetts Thefts."

failure to state a claim, but the Court allowed two of Plaintiff's claims, specifically, the defamation and malicious prosecution claims, to proceed as to the Staten Island Thefts.  (*Id.*, ECF No. 49 at 23-25.)  In doing so, the Court relied solely upon Plaintiff's allegation—which had to be viewed as true for purposes of a motion to dismiss—that his name was erroneously attached to two different shoplifters, which Plaintiff now appears to have known was false all along.  (*Id.*)  Indeed, document discovery in the New York Action confirms—and Plaintiff now concedes—that Barrie was the only shoplifter misidentified as Plaintiff in connection with the Relevant Thefts.[5]

Nevertheless, instead of withdrawing his claims against Apple in the New York Action, Plaintiff continued to seek relief from Apple by amending his complaint a second time with yet new (and baseless) allegations to support the essential element of malice.  Plaintiff then filed a second lawsuit against Apple and SIS on October 27, 2020 in United States District Court for the District of New Jersey for claims related to Barrie's thefts from Apple stores in New Jersey.  (*See Bah v. Apple Inc., et al.*, 20-cv-15018 (MCA) (MAH) (D.N.J., filed Oct. 27, 2020) (the "New Jersey Action").)  And, despite having evidence through discovery in the New York Action that Plaintiff's central allegations against Apple are false, Plaintiff filed a third action— the instant case—for claims related to Barrie's Massachusetts Thefts.  All three actions are without merit and rely on allegations that Plaintiff and his counsel know to be false.

Apple has moved to dismiss the second amended complaint in the New York Action and is considering filing a motion for sanctions in that case, as it has become evident that Plaintiff

---

[5] As addressed above, (*see supra* n.1), the Complaint appears to be limited to alleged conduct related to Barrie's Massachusetts Thefts, but even if that is not the case, Plaintiff's claims are deficient for the reasons set forth in Apple's August 20, 2021 motion to dismiss the Complaint.

and his counsel brought that lawsuit, too, without conducting a reasonable inquiry in violation of Rule 11.  Apple's motion to dismiss in the New York Action is fully submitted and pending.

Apple also moved to dismiss Plaintiff's claims against Apple in the New Jersey Action and that motion is fully submitted and pending.  But Apple also moved for sanctions against Plaintiff and his counsel in the New Jersey Action because they violated Rule 11 by filing claims against Apple that were based on allegations that discovery in the New York Action demonstrated to be false.  Apple's motion for sanctions in the New Jersey Action, which is substantively similar to the instant motion, also is fully submitted and pending.

Plaintiff's decision to file *a third* action—the instant case—based on allegations that he and his counsel know are false presents an even more egregious violation of Rule 11.  This is precisely the kind of misconduct and frivolous litigation that Rule 11 sanctions are intended to deter and they should be imposed against Plaintiff and his counsel in this case.[6]

**B. Plaintiff Knows, and Discovery in the New York Action is Dispositive, that Apple Has No Liability for Plaintiff's Name Being Associated With an Individual Who Stole Merchandise from Apple Retail Stores.**

Plaintiff's own communications produced in the New York Action show that he knew about Barrie's thefts and lies in real-time (or close to real-time), because they were friends and

---

[6] Notably, the same core team of attorneys are representing Plaintiff in all three cases, although not all are admitted in the three relevant jurisdictions and thus have not appeared on filings in all three cases.  Subhan Tariq, Esq. and Daniel Malis, Esq. are handling the New York Action; Mr. Tariq appears alone on the pleadings in the New Jersey Action.  And Mr. Malis signed the Complaint, while Mr. Tariq has corresponded with counsel for Apple regarding service of the Complaint in the instant case.  *See* Declaration of Julie O'Neill, dated August 20, 2021 (the "O'Neill Declaration" or "O'Neill Decl.") at ¶ 4.  A third attorney—Steven C. Zoni, Esq.—filed a notice of appearance in the instant case.  Apple's motion for sanctions is directed at all three attorneys, as they all have constructive knowledge of the documents produced in the New York Action, many of which are Plaintiff's own documents and communications, and thus violated Rule 11's duty to reasonably inquire as to the legal and factual basis of claims before filing a lawsuit.  *See* Fed. R. Civ. P. 11(b)(3).

had at least some mutual acquaintances.[7]  Just weeks after police arrested Barrie under Plaintiff's name for stealing from Apple's retail store in Paramus, New Jersey, Plaintiff sent a text message to a family member seeking help "track[ing] . . . down" Barrie, whom Plaintiff claimed had "framed" him by stealing from an Apple retail store and "put[ting] it under" Plaintiff's name.[8] Around that same time, Plaintiff contacted Barrie and demanded that he return the copy (or original) of Plaintiff's temporary driver's learner's permit that Plaintiff knew Barrie had in his possession and may have been presenting to police as identification.[9]

Despite having contemporaneous knowledge of Barrie's misconduct, Plaintiff did not report Barrie to law enforcement for identity theft or otherwise try to mitigate the harm Barrie was causing to Plaintiff, Apple, and perhaps others, by his thefts and false impersonation of Plaintiff.  Nor did Plaintiff respond to notices he allegedly received in connection with the Relevant Thefts by telling relevant prosecutors, courts, or law enforcement that he knew the person who had committed the crimes and had falsely provided Plaintiff's name to police.

Instead, Plaintiff feigned ignorance as to the shoplifter's actual identity, even after the New York City Police Department ("NYPD") executed a warrant for Plaintiff's arrest in connection with the Staten Island Thefts and then declined to pursue charges because Plaintiff's appearance did not match the suspect depicted in the surveillance video.  Plaintiff, however, knew exactly who that suspect was—his friend, Barrie—but instead of explaining to the NYPD the reason for the misidentification, Plaintiff questioned the NYPD about why the actual

---

[7] *See* O'Neill Decl., Ex. 1 (Plaintiff's Responses to Apple's Requests for Admissions ("RFA") in the New York Action) at Response to RFA No. 5 (admitting that Plaintiff considered Barrie to be a friend at one point in time).

[8] *See* O'Neill Decl., Ex. 2 at PL001315.

[9] *Id.*, Ex. 3 at PL001344 ("I need my shit"), 1341 ("you still using my shit").

shoplifter had not yet been found, complaining to an NYPD detective, "[t]his guy [is] still running around free . . . trying to mess up my name . . . it should be easy for you guys to catch him."[10]  At no time did Plaintiff tell law enforcement with whom he was interacting that he knew the identity of the shoplifter and had his contact information.

In sum, there is no basis—either in law or in fact—for Plaintiff's claims that Apple "defamed" or "maliciously prosecuted" him by reporting his name to law enforcement, and Apple should not be required to defend this frivolous action that Plaintiff and his counsel know is based on patently false allegations that will never find evidentiary support.  Accordingly, sanctions are appropriate in this case.

## ARGUMENT

## I.  SANCTIONS ARE WARRANTED BECAUSE PLAINTIFF'S CLAIMS ARE FRIVOLOUS AND BASED ON KNOWINGLY FALSE ALLEGATIONS.

### A.  Rule 11 Was Enacted To Address Exactly This Type of Misconduct.

Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] a duty on counsel to investigate their clients' claims before making any filings and to reassess them throughout the litigation."  *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 758 (1st Cir. 1988).  To that end, Rule 11(b) requires, in relevant part, that an attorney certify that "the factual contentions [in any pleading, written motion, or other paper] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Under the Rule, "[p]rior to signing a pleading, a litigant must fulfill the affirmative duty to conduct a reasonable inquiry into the facts and the law."  *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426

---

[10] O'Neill Decl., Ex. 4 at PL000516-17.  If Plaintiff had not concealed Barrie's identify from the NYPD, he might have been apprehended and correctly identified prior to committing additional crimes, including the Massachusetts Thefts.

(1st Cir. 1992) (quotation and citations omitted); *see also Clinton v. Jones*, 520 U.S. 681, 709 n. 42 (1997) (quoting Fed. R. Civ. P. 11(b)(1), (3)) (sanctions appropriate where allegations "'lack[] evidentiary support' or [are] unlikely to prove well-grounded after reasonable investigation").

The decision on whether to impose sanctions under Rule 11 is based on "an objective standard of reasonableness under the circumstances." *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990). And a claim is frivolous under Rule 11 when allegations are "not well-grounded in fact. . . ." *Id.* at 632. Thus, sanctions are appropriate where a plaintiff and his attorney make an inaccurate factual assertion in spite of known facts or without first conducting the necessary background research. *See, e.g.*, *id.* at 632-34 (Rule 11 sanctions appropriate against attorney who unreasonably brought claims with either no supporting evidence or where record directly contradicted claim); *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 605 (1st Cir. 1988) (affirming sanctions and concluding no reasonable inquiry where counsel could have readily learned from clients facts that would have shown their claim for intentional infliction of emotional distress lacked validity); *Bay State Towing Co.* v. *Barge American 21*, 899 F.2d 129, 131 (1st Cir. 1990) (no reasonable inquiry where extensive record contained nothing to suggest why or how allegations could be true).

Here, Plaintiff and his counsel had the benefit of thousands of pages of documents produced during discovery in a nearly identical case (the New York Action) well before filing the Complaint—including Plaintiff's own communications and law enforcement records Plaintiff himself subpoenaed and produced—yet they appear to have ignored that evidence and filed this Complaint alleging facts they know are patently false in violation of Rule 11. Accordingly, sanctions are warranted in this case.

**B.      Discovery in the New York Action Shows that Plaintiff Knows Apple Was Not At Fault For His Arrest.**

Through his Complaint, Plaintiff seeks to hold Apple liable for reporting Barrie's thefts to law enforcement and providing the same name (Plaintiff's) that Barrie had provided to police in Paramus when he was arrested for stealing merchandise from an Apple retail store in Paramus. (Compl. at 1-3.)  Plaintiff asserts four causes of action against Apple:  (1) defamation, (2) malicious prosecution, (3) negligent or intentional misrepresentation, and (4) negligence.  All of these claims are deficient for the reasons set forth in Apple's August 20, 2021 motion to dismiss. But, the claims also are all frivolous, because they are premised on theories of malice—required for all claims[11]—that Plaintiff and his counsel know are patently false.

**1.      Plaintiff's Theory of Malice is Based on a Falsehood; Barrie Did Not Present Plaintiff's Identification to Apple.**

Plaintiff's primary theory of malice is that Apple linked Plaintiff's name to Barrie's thefts by improperly relying on a photo-less temporary driver's learner's permit that Barrie purportedly presented to Apple when he was apprehended for the Paramus Theft.  (Compl. ¶¶ 17-23, 63, 83, 170.)  Even if true, such allegations do not amount to malice for the reasons explained in Apple's August 20, 2021 motion to dismiss.  But Plaintiff's allegations are not true, and he and his counsel have no reasonable basis to contend otherwise in light of known facts and documentary evidence produced during discovery in the New York Action.

---

[11] For defamation, Plaintiff must show that the defendant acted with actual malice to overcome the qualified privilege that protects any alleged statements about the Relevant Thefts that Apple employees may have made to each other, SIS, or police.  *See [Name Redacted – Victim/Plaintiff] v. Queenan,* 12 Mass. L. Rep. 461 (2000).  For malicious prosecution, Plaintiff must show that Apple initiated a prosecution against Plaintiff with malice.  *See Chervin v. Travelers Ins. Co.,* 448 Mass. 95, 110 (Mass., 2006).

Specifically, in the New York Action, Apple's third-party security vendor, SIS, already produced a copy of its incident report documenting the Paramus Theft and apprehension of that shoplifter (Barrie).  (*See* O'Neill Decl., Ex. 5.)  That report plainly states that the perpetrator "was searched for weapons, but did not have a [driver's license], so his information was obtained verbally and verified at [the police department]."  (*Id.* at SIS000009.)  The incident report also includes the notation, "NA", in the space for "Driver License #", further confirming that Barrie did not have or present any identification that day, let alone a "stolen" or counterfeit copy of Plaintiff's temporary driver's learner's permit.  (*Id.* at SIS000008.)  Moreover, records from the Paramus Police Department—which Plaintiff subpoenaed and then produced to Apple and SIS in the New York Action—neither indicate nor suggest that Barrie presented any identification when he was arrested.  (*See* O'Neill Decl., Ex. 6.)

Nevertheless, Plaintiff baselessly alleges, "upon information and belief," that Barrie "was carrying [Plaintiff's] learner's permit" and that Apple "used [the] learner's permit without a photograph . . . [to claim] a positive identification."  (Compl. ¶¶ 20, 83.)  There can be no reasonable basis whatsoever for these knowingly false allegations, especially given SIS's incident report and the Paramus Police Department records, all of which demonstrate that Barrie did not have or present Plaintiff's identification during Barrie's apprehension or arrest in connection with the Paramus Theft.

### 2.    Plaintiff's Alternative Theory of Malice Also is Based on a Falsehood; Barrie Was the Sole Shoplifter Misidentified as Plaintiff.

As set forth above, the Court in the New York Action initially held that Plaintiff had sufficiently pleaded malice to support his New York-based defamation and malicious prosecution claims in that action.  (*See supra* at 4 (citing New York Action, ECF No. 49 at 23-25).)  The Court's holding was based exclusively on Plaintiff's allegations that two visibly

distinct shoplifters had been misidentified as Plaintiff in connection with the Relevant Thefts. (*See id.*)  Documents produced in the New York Action—including incident reports and surveillance imaging—disproved Plaintiff's allegations on that point and showed that Barrie was the sole person misidentified as Plaintiff in connection with all of Barrie's thefts from Apple stores, including every single theft included in the Complaint in the instant action.[12] Accordingly, Plaintiff abandoned that theory of malice in his second amended complaint in the New York Action, although he continues to pursue these meritless claims under yet new theories in the New York Action.  Plaintiff nevertheless resurrects that theory of malice in this case by confusingly alleging in the Complaint that Barrie was the person whom Apple and SIS had "repeatedly . . . identified as [Plaintiff]," (Compl. ¶ 134), while simultaneously suggesting— without any factual support—that Apple and SIS had identified "multiple individuals" as Plaintiff.  (*Id.* ¶ 152.)

Plaintiff and his counsel know that neither Apple nor SIS identified anyone other than Barrie as Plaintiff in connection with any of the thefts alleged in the Complaint.  Accordingly, all of Plaintiff's misleading allegations in the Complaint to the contrary are knowingly false, including the allegations described below:

---

[12] *See* O'Neill Decl., Ex 5 at SIS000015 (imaging from Paramus Theft); Ex. 7 at PL000009 (imaging from Greenwich Theft); Ex. 8 at SIS000032-33 (imaging from Short Hills Theft); Ex. 9 at SIS000529-30 (imaging from Boston Theft); Ex. 10 at SIS000134-38 (imaging from Cherry Hill Theft); Ex. 11 at SIS000124, 126 (imaging from Freehold Theft); Ex. 12 at SIS000205-06 (imaging from Rockaway Theft); Ex. 13 at PL000185 and Ex. 14 at APL-BAH_00000306 (imaging from Staten Island Thefts); Ex. 15 at SIS000148 (imaging from Trumbull Theft); Ex. 16 at SIS000522 (imaging from Holyoke Theft).  There is no question the person depicted in the surveillance imaging is Barrie, as his misrepresentations to police also caused his image to be associated with Plaintiff's name in connection with Plaintiff's official New York Criminal History Report.  (*Id.*, Ex. 17.)  Plaintiff has admitted that the person whose image is depicted in his New York Criminal History Report is Barrie, (*id.*, Ex. 1 at Response to RFA No. 24), whose image also appears in the surveillance imaging in Exhibits 5, 7-16 to the O'Neill Declaration.

- Plaintiff alleges that Apple—a non-party in the Boston criminal case—provided prosecutors with surveillance video of "a second thief," whom Plaintiff seems to suggest had been misidentified as Plaintiff in the Boston Theft.  (Compl. ¶¶ 66, 152(4).)  But, in the New York Action, SIS produced an incident report with surveillance imaging from the Boston Theft that makes clear that SIS had identified Barrie as Plaintiff in that incident too, based on Barrie's prior misrepresentations and use of Plaintiff's name.  Plaintiff also knows (or reasonably believes) that Barrie committed the Boston Theft, as Plaintiff texted a family member, stating that Barrie (referred to by his middle name, Alieu, in the exchange) "framed me [and] went and stole 1200 worth of Apple Corp in Boston [a]nd put it under my name . . . ." (O'Neill Decl., Ex. 2 at PL001315.)

- Plaintiff alleges that a different person named "Ousmane Bah . . . responded to the warrant issued for the Cherry Hill thefts," falsely implying that Apple had misidentified someone other than Barrie as Plaintiff.  (Compl. ¶¶ 143, 152(5).)  For this incident too, SIS produced in the New York Action a report and surveillance imaging showing that Barrie once again was the person misidentified as Plaintiff, based on Barrie's prior misrepresentations.  (O'Neill Decl., Ex. 10 at SIS000134-138.)[13]

As set forth in Apple's August 20, 2021 motion to dismiss the Complaint, the Court need not accept as true the baseless, conclusory allegations above, as they clearly contradict Plaintiff's concession that Barrie was the "imposter" whom (according to the Complaint) Apple and SIS had "repeatedly . . . identified as [Plaintiff]." (Comp. ¶ 134.)  But, the Court also should impose

---

[13] While not entirely clear, Plaintiff also appears to suggest that SIS misidentified a different person as "Ousmane Bah" (Plaintiff's name) in Montreal, which somehow should have put SIS on notice during the Paramus apprehension and arrest that Barrie was not Plaintiff.  (Compl. ¶¶ 23, 152(3).)  But, that is yet another example of Plaintiff's improper attempt to mislead the Court, as SIS's incident report for the Paramus Theft demonstrates that SIS correctly noted that another person named "Ousmane Bah" had been arrested two years earlier in Montreal, but that it was a "different person same name though."  (*See* O'Neill Decl., Ex. 5 at SIS000009-10.) Plaintiff knows that Apple or SIS did not erroneously connect anyone (other than Barrie, based on his false identification of himself) to Plaintiff's name and address, yet Plaintiff appears to contend that a party acts with malice by reporting a name to police if that name belongs to more than one person.  That is not the law and Plaintiff's allegations about the Montreal theft are intended to create confusion where none exists, given the documents produced in the New York Action.

sanctions upon Plaintiff and his counsel for making knowingly false allegations in an effort to mislead the Court and hold Apple accountable for claims they know to be without merit.

      **3.**      **Plaintiff's Final Theory of Malice Also is Based on a Falsehood; Plaintiff Knows That Barrie—Not Apple—Caused Plaintiff's Name to Be Linked to Barrie's Thefts.**

Finally, Plaintiff attempts to show malice by impugning Apple's motives for reporting Barrie's thefts to the police, suggesting Apple engaged in "spoliation" in the underlying criminal cases related to Barrie's thefts from Apple retail stores or withheld information from the Court in the New York Action. (Compl. at 1-2, ¶¶ 76, 158-60.) Even those "theories," however, rely on legally frivolous arguments and knowingly false allegations.

First, Apple was a non-party to the underlying criminal cases and did not engage in any spoliation of evidence in those cases, as Plaintiff well knows. Rather, when (and if) the parties in those cases requested surveillance video regarding the Relevant Thefts, Apple provided whatever relevant video still existed from each Apple retail store. Moreover, Plaintiff did not suffer any harm in any underlying criminal action for the Relevant Thefts, as none went to trial or resulted in an adverse finding, conviction, or guilty plea as to Plaintiff. To the contrary, prosecutors either declined to pursue charges if there was insufficient evidence or SIS witnesses told prosecutors or the relevant courts that Plaintiff did not appear to be the person involved in the Relevant Thefts, as Plaintiff, himself, alleged. (Compl. ¶¶ 143, 159.) Indeed, Plaintiff did not even raise an issue of spoliation in *any* of the underlying criminal cases, as any purported lack of evidence had no negative impact on Plaintiff in those actions.

Next, to the extent Plaintiff actually is alleging that Apple's handling of surveillance imaging of the Relevant Thefts demonstrates that Apple acted to purposefully harm Plaintiff in the underlying criminal cases, such allegations are baseless (and false). Plaintiff and his counsel know that Barrie is the one who caused Plaintiff's name to become associated with the Relevant

Thefts and that Apple did not baselessly target Plaintiff, accuse him of theft out of spite or ill will, or have any reason to try to disrupt the criminal cases regarding the thefts.  Nor did Apple purposefully withhold exculpatory evidence (although Plaintiff arguably did so by concealing Barrie's identity from police and prosecutors).

### C.   Plaintiff and His Counsel Purposefully Conceal Key Facts That Fatally Undermine Plaintiff's Claims.

All of Plaintiff's false and misleading allegations are intended to obfuscate the real reason Plaintiff's name became associated with Barrie's thefts in an attempt to manufacture a theory of liability as to Apple.  As part of that flawed effort to hold Apple liable for harm that Barrie caused, Plaintiff and his counsel allege a completely false narrative in the Complaint, portraying Plaintiff as the unfortunate victim of a purportedly random identity theft that allegedly left him accused of numerous thefts with no ability to clear his name.  That narrative is entirely dependent on allegations that Plaintiff and his counsel know are not true, but nevertheless include in the Complaint in blatant violation of Rule 11.

First, Plaintiff falsely alleges that his temporary driver's learner's permit "went missing" at some point prior to May 2018.  (Compl. ¶ 10.)  In fact, Plaintiff's own communications produced in the New York Action reveal that Plaintiff "left [his] permit" at "[Barrie's] house one day," and then demanded that Barrie return the permit, because Plaintiff feared Barrie was using it to impersonate him.[14]  According to text messages Plaintiff produced in the New York Action, Plaintiff communicated with Barrie two days after Barrie was arrested under Plaintiff's name for stealing merchandise from Apple's Greenwich store, as follows:

Prince Alpha [Plaintiff]:  ***I need my shit***

_____

[14] O'Neill Decl., Ex. 2 at PL001315, Ex. 3 at PL001344, 1341.

> Prince Barry [Barrie]:  I ain't gonna lie stop talking like that
> . . .
> Prince Alpha [Plaintiff]:  And I know you've been seeing me call u
>
> Prince Barry [Barrie]:  you don't even fuck know what I went through this week
>
> Prince Barry [Barrie]:  so just stop it
>
> Prince Barry [Barrie]:  ***Ima give you your shit tonight period***[15]

Plaintiff also produced communications in the New York Action that make evident that he knew (or believed) that Barrie had impersonated him in connection with the Boston Theft on May 31, 2018.  Specifically, on June 9, 2018, Plaintiff wrote to his brother, as follows:

> Plaintiff:  Bro can you track this n**** Alieu [Barrie] down for me.  ***He framed me.  He went and stole 1200 worth of Apple Corp in Boston [a]nd put it under my name smh.***  I have court for some bullshit.
>
> Plaintiff's Brother:  I am not tracking no one.  I been telling you over and over to do not get involved in shit like that but you don't listen. Last time I asked you why you went to NJ but u brought b.s. ass excuses.  Koto been talking to you every day and u did not listen to him.  So now you will have to deal with the consequences and good luck.
>
> Plaintiff:  ***He has my permit.  He used that.***  I went to his house one  day [a]nd left my permit in his house . . . he stole from Apple . . . 1200 worth of Apple [product].[16]

Similarly, discovery in the New York Action demonstrates that on September 12, 2019, Plaintiff and Barrie discussed Barrie's impersonation of Plaintiff and Barrie admitted that he had misidentified himself as Plaintiff.  Excerpts of those communications are as follows:

> Prince Alpha [Plaintiff]:  You the snake and rat of the year
>
> Prince Alpha [Plaintiff]:  Shit going bite you back in you're (sic) butt
> . . .
> Prince Alpha [Plaintiff]:  Karma a bitch

---

[15] *Id.*, Ex. 3 at PL001343-44 (emphasis added).  Plaintiff admits in his discovery responses that the parties communicating in these text messages are himself, Bah ("Prince Alpha"), and Barrie ("Prince Barry").  *See* O'Neill Decl., Ex. 1 at Plaintiff's Response to RFA No. 6.

[16] O'Neill Decl., Ex. 2 at PL001315 (emphasis added).

. . .

Prince Barry [Barrie]: ***What I did was messed up you have all right do be mad bro 100[%] don't get me wrong 100[%]***

. . .

Prince Alpha [Plaintiff]: ***You still using my shit***

Prince Alpha [Plaintiff]: . . . leave me outa you're miserable life man

. . .

Prince Alpha [Plaintiff]: I'm warning you

Prince Alpha [Plaintiff]: This is the last time

. . .

Prince Barry [Barrie]: ***I already told you wassup I was wrong for what I did 100[%] and I been stopped using your shit I got my own shit and it's whatever you do what you gotta do 100[%]***

Prince Alpha [Plaintiff]: You a liar bruh I ain't going get into details

Prince Alpha [Plaintiff]: You'll see what's coming for you[17]

Second, Plaintiff falsely alleges that he "believed that the one piece of evidence definitively absolving him of [Barrie's] thefts had been destroyed by Apple." (Compl. ¶ 117.) To the contrary, Plaintiff's own communications make clear that he had all the exculpatory evidence he needed to refute any charges and to bring the actual perpetrator to justice—namely, knowledge that Barrie had been committing the thefts, along with Barrie's admission that he had impersonated Plaintiff and contact information for Barrie.[18] Plaintiff made the conscious decision to withhold that exculpatory information from law enforcement—which he admits

---

[17] O'Neill Decl., Ex. 3 at PL001336-1342 (emphasis added). Plaintiff also admitted in the New York Action that he believed Barrie had been falsely identifying himself as Plaintiff. (*Id.*, Ex. 1 at Plaintiff's Response to RFA No. 12.)

[18] O'Neill Decl., Ex. 2 at PL001315 (Plaintiff's communications with his brother stating that Barrie had "framed" him); Ex. 3 at PL001336-1345 (Plaintiff's communications with Barrie asking him to return his temporary learner's driver's permit, calling him a "snake" and a "rat," and accusing Barrie of continuing to impersonate him. Barrie also writes "I was wrong for what I did [100%] and I been stopped using your shit I got my own shit . . . .").

having done[19]—and to cover for his friend by concealing his identity.  Plaintiff then filed three meritless lawsuits against Apple for reporting Barrie's thefts to law enforcement, alleging theories and facts that Plaintiff and his counsel knew to be false.

Apple could not have known the scope of Plaintiff's knowledge about the Relevant Thefts (and accordingly, the extent of Plaintiff's false allegations) when he first filed the New York Action, which also is meritless.  But there can be no doubt that he and his counsel filed this case without any reasonable expectation of finding factual support for the Complaint's allegations because Plaintiff and his counsel know the allegations are false, as they are contradicted by evidence already produced (including by Plaintiff, himself) in the New York Action.  Accordingly, sanctions are warranted in this case, which also should be dismissed for the reasons set forth in Apple's August 20, 2021 motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Apple respectfully requests that the Court grant this motion under Rule 11 of the Federal Rules of Civil Procedure for Apple's attorneys' fees and costs incurred defending this case based on allegations that Plaintiff and his counsel know to be false.

Dated:    August 20, 2021                        Respectfully submitted,

MORRISON & FOERSTER LLP

Julie O'Neill
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 648-4700
Facsimile:  (617) 830-0142
Email: joneill@mofo.com

Carrie H. Cohen (admitted *pro hac vice*)
Katie L. Viggiani (admitted *pro hac vice*)

---

[19] O'Neill Decl., Ex. 1 at Plaintiff's Response to RFA No. 15 (admitting that as of October 30, 2020, Plaintiff had not provided Barrie's name to law enforcement or prosecutors in connection with the Relevant Thefts).

250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email:  ccohen@mofo.com;
kviggiani@mofo.com

By:  /s/ *Julie O'Neill*
    Julie O'Neill

*Counsel for Defendant Apple Inc.*