UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
OUSMANE BAH,                    )
    Plaintiff              )
                           )
                           )
    v.                     )
                           )          Docket No.: 1:21-cv-10897-RGS
                           )
APPLE, INC. and                )
SECURITY INDUSTRY              )
SPECIALISTS, INC.,             )
    Defendants.            )
_____)

## **PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS AND REQUEST FOR ORAL ARGUMENT**

Plaintiff,
By His Attorney,

Daniel Malis, Esq.
BBO #315770
MALIS|LAW
30 Second Street
Cambridge, MA  02141
(617) 491-1099
daniel.malis@malislaw.com

Date:   September 10, 2021

## PRELIMINARY STATEMENT

This matter concerns claims of defamation per se and malicious prosecution of the Plaintiff, a teenager, filed against corporate Defendants Apple and its investigative agent, SIS, based upon numerous false charges of felony theft, based upon reckless misidentification and prosecution of a shoplifter in numerous Apple stores in five states over a twenty month period, beginning in April 2018, which Apple and SIS continued to prosecute well into the following year.  Defendants have filed multiple Motions to Dismiss these claims, including two Motions to Dismiss filed in New York, the second of which is identical to the pleadings filed here. The New York Motions have both been denied.  *(See Bah v. Apple, Inc. et al., Southern District of New York Docket No. 1:19-cv-03539-PKC, Pleading No. 161, September 8, 2021).* This Court, presented with the same essential grounds as the Southern District, should take the same action here.

These charges all derived from a reckless-to-conscious disregard of signs of unreliability that would have caused a reasonable person, objectively, to have serious doubts regarding the truth of the charges and identification, including:

- The thief lacked photo ID. Apple and SIS merely accepted his word as regarding his name, even after he resisted arrest;
- The thief presented only a stolen, non-laminated paper New York temporary learner's permit without a photograph;
- The learner's permit expressly warned that it should not be used as a means of identification;
- SIS and Apple simply disregarded the half foot height differential between the apprehended thief and the description on the learner's permit.

Subsequent actions by the corporate Defendants, including the concealment of evidence which would have exonerated the Plaintiff from these charges near or at outset, destruction of exculpatory evidence, and perjured affidavits, demonstrate that these Defendants acted either

with reckless disregard for the truth or with outright malice and false purpose, vitiating any claims of privilege.

These false charges in New Jersey, Connecticut, Massachusetts, Pennsylvania, and New York eventually resulted in the Plaintiff's false arrest in New York in November 2018, and imperiled and delayed his efforts to become a naturalized US citizen.  All of these false charges and prosecutions were initiated when the thief was in physical custody of SIS and "identified" by use of the misleading and facially unreliable identification in Paramus, New Jersey in late May 2018. The ensuing months compounded and expanded the range of this misidentification, resulting in 20 separate defamatory events in total.

Defendants nevertheless seek dismissal of Plaintiff's Complaint, stating that on its face the 258 paragraph Complaint fails to present sufficient facts to present a plausible claim for relief, based upon a claim of qualified privilege, although Plaintiff has presented substantial evidence that their actions were taken in reckless disregard for the truth of their criminal charges. Further, in a separate pleading designed intentionally to attempt to argue the merits of the case from the outset, claim that even though the New York litigation has survived two Motions to Dismiss, the Complaint is not only unjustified legally but is frivolous and warrants sanctions.

As noted above, the identical arguments briefed here were twice presented to the Court in New York concerning the New York apprehensions and charges, which are on the same timeline continuum as the subject claims in this Court. On September 8, 2021, Judge Castel, for the second time, again denied the Defendants' Motions. *See Bah v. Apple, Inc., 2020 US Dist. LEXIS 22867; Bah v. Apple Inc., 2021 US Dist. LEXIS 170203.* If for no other reason than these prior rulings, this Court should deny these Motions summarily.

## PROCEDURAL HISTORY

I. *Bah v. Apple et al.*, **1:19-cv-03539-PKC – Southern District of New York**

Plaintiff initially commenced his claims against Defendants Apple and SIS, in the Southern District of New York on April 22, 2019. *See Complaint,* docket number 1:19-cv-03539-PKC *(hereinafter "Southern District Case" or "SDNY Case")*. Defendants Apple and SIS sought leave to file motions to dismiss on May 16, 2019, claiming that the New York court lacked personal jurisdiction over the allegations, and further, that Plaintiff's Complaint concerning malicious prosecution and defamation had failed to state a claim on which relief could be granted based upon a claim of qualified privilege.

Judge K. Peter Castel, for the Court,  granted Plaintiff leave of Court to Amend his Complaint, which he filed June 10, 2019.  As part of their renewed Motion to Dismiss the Complaint, Defendant Security Industry Specialists, Inc. (*hereinafter "SIS"*), through counsel, filed an affidavit in which Tom Stevens, Vice President of Retail Operations for Security Industry Specialists, swore under oath that "**SIS did not identify Ousmane Bah to law enforcement in New York State** and did not file any report or complaint against him with law enforcement in New York State." ***Stevens Affidavit, Complaint, Exhibit 4, ¶161; Woodruff email to NYPD, Exhibit 3, ¶162***.

In a February 10, 2020 Opinion and Order, Judge Castel opining that the Court lacked personal jurisdiction over Defendants for Bah's defamation claims premised on statements related to Connecticut, New Jersey, and Massachusetts. Judge Castel reasoned "[t]he required substantial nexus between the allegedly defamatory statements (in other states) and defendants' New York commercial activities is lacking." *Order, Docket No. 49.* However, as noted above, he denied the Defendants' Motions to Dismiss the New York based claims.

Defendants filed Answers to the SDNY matter on March 6, 2020. Following our Civil Case Management Conference and a Protective Order, the parties commenced discovery. On July 1, 2020, Defendants produced documents which conclusively established that employees in SIS' New Jersey operations, assisting Apple's corporate office and New York store, had identified Ousmane Bah by name to the NYPD, demonstrating that the Stevens affidavit was false and perjured.

Plaintiff filed a motion to amend the Complaint in the SDNY case on July 15, 2020, seeking, based upon the Stevens affidavit, to again add the Massachusetts and New Jersey allegations. On August 11, 2020, Judge Castel declined to re-consider his decision and directed Plaintiff to pursue his non-NY claims outside of New York. Plaintiff filed his Second Amended Complaint in the SDNY Case as directed on August 27, 2020.


Consistent with Plaintiff commenced his New Jersey claims against Defendants in the District of New Jersey on October 27, 2020. *See Complaint,* docket number 2:20-cv-15018-MCA-MAH (hereinafter "*New Jersey Case*" or "*DNJ Case*").  Plaintiff filed this instant action on May 28, 2021 alleging the identical Massachusetts-based claims raised by the Plaintiff's initial, first, and second amended Complaints in the Southern District action.

All Defendants have filed motions to dismiss the New Jersey Case on identical grounds as the subject motions pending in this Court. As noted, the New York motions have been denied. The matter is currently fully briefed and awaiting a ruling from the US District Court in New Jersey.

**STATEMENT OF FACTS**[1]

In March 2018, Plaintiff Ousmane Bah ("Plaintiff" or "Bah") was a 17-year-old, Black high-school student residing in Bronx, NY. He had no criminal record. *Complaint, ¶ 1.* He was not a U.S. citizen at that time but was residing in the U.S. on a "green card" and had applied for citizenship. *Complaint, ¶ 164.*

On March 26, 2018, Bah received a temporary New York State temporary driver's learner's permit containing descriptive details: height 5'7"; brown eyes; his address and date of birth, but no photograph. Most importantly, the document stated in bold letters: **"THIS TEMPORARY DOCUMENT IS NOT VALID FOR IDENTIFICATION PURPOSES."** *Complaint, ¶ 9, Exhibit 1*[2]

At all times relevant to this dispute, Defendant SIS provided security services to Defendant Apple at its New Jersey stores, including its stores at the Paramus Mall in Paramus, NJ; Boston, MA; and Holyoke, MA. *Complaint, ¶ 17, 30, 79, 126.* As part of its work, SIS policed Apple stores for shoplifters, apprehended them, and turned them over to law enforcement; swore out complaints against shoplifters on Apple's behalf; and appeared at subsequent court hearings to prosecute offenders. *Complaint, ¶ 136.* Further, SIS assisted police departments investigating and prosecuting shoplifting offenses, including providing identification information; promising security videos and imagery from store cameras (*see Complaint, ¶ 71, 84.* SIS, as Apple's store loss prevention arm, was not a passive actor in prosecutions, as they actively pursued convictions of accused shoplifters.

---

[1] Pursuant to FRCP 12(b)(6), the allegations in Plaintiff's Complaint are alleged here as true. This discussion also draws inferences from those facts to the Plaintiff's benefit, as required by that Rule. All paragraph references refer to the Plaintiff's Complaint.

[2] Exhibit 1 is filed on seal with this Court as it contains identifying personal information of the Plaintiff. However, as this information is essential to the arguments in the Motion to Dismiss, the information is referred to generically in this Opposition.

## I.    The Paramus Theft -- May 24, 2018

On May 24, 2018, an individual was apprehended for shoplifting from an Apple store in Paramus, New Jersey. *Complaint, ¶ 17.* Defendant Steven Yhap identified the individual as Ousmane Bah. *Complaint, ¶22; SIS Report (unredacted), Defense Motion Exhibit 1;  Plaintiff's Proposed Exhibit 5[3].* According to Defendants' own incident report, the imposter attempted to resist apprehension but was eventually handcuffed by Defendant Steven Yhap. *Complaint, ¶ 18; Exhibit 6.* Once handcuffed and detained by Yhap, the imposter was brought back to the store and sequestered in the manager's office. *Complaint, ¶ 19 and Defense Exhibit 1.* His pockets were searched, and Yhap found the merchandise he had stolen. *Id.*

The imposter was carrying a paper version of the Plaintiff's interim learner's permit, which, as noted above, had no photograph, specifically stated it could not be used for identification purposes, and described a person who did not resemble the imposter. *Complaint, Exhibit 1.*   **The imposter was a half-foot taller than the individual described in the learner's permit, which had been issued within two months of the arrest**. *Exhibit 1; Complaint, ¶ 14, 20, 23.[4]* The SIS report completed by Yhap noted that the offender's height was 6', but failed to record the discrepancy between the offender and the (admittedly unreliable) ID. *Id.; Complaint,*

---

[3] Exhibit 5 is submitted under seal pursuant to Local Rule 7.1 in the context of a Motion to Unseal, filed separately with the Court via mail as required by that Rule.

[4] It is for this reason that the Plaintiff contends that the strategic redactions in the Exhibit presented by SIS and Apple to this Court regarding the Paramus arrests must be removed, and this Court must, in the context of the subject Motion, consider the full record, which contains information which SIS likely obtained through the learner's permit they suggest they did not review.  Plaintiff has submitted directly to this Court a Motion to Unseal the report so that the allegations presented herein are within plain view of the Court and may be relied upon in its decision. Plaintiff submits that while there is identifying information of the Plaintiff in the Exhibit, Plaintiff consents to the unsealing.  Further, there are no unique methods of investigation of either Defendant which will be disclosed in the report that would in any way amount to a "trade secret" worthy of a protective order.

*¶ 12, 20, 23.* Other than the offender's observed height, however, the May 24, 2018 incident report includes all the identifying information from the facially unreliable learner's permit. *Id.*

Yhap, on behalf of his employer and Apple, identified the imposter as Ousmane Bah to law enforcement with the expectation that his identification would be relied upon by the officers. *Complaint, ¶ 22.* He also failed to advise the Paramus Police that the apprehended thief did not match the description in the ID, or that the ID was not reliable. *Complaint, ¶ 23.* Yhap promised to provide the Paramus Police with the store's security video showing the theft. *Complaint, ¶ 27, 71.*

Upon receiving custody of the imposter, Paramus Police placed the individual in an interview room and questioned him under the supervision of Defendant Detective Siemon. The imposter refused to make a statement to Det. Siemon and misspelled what was presumably his own name on the booking statement, signing it initially as "Ousama Bah," scratching it out, and rewriting it as "Ousmane Bah." *Complaint, ¶ 21.*

Despite these obvious clues that the impostor was lying about his identity, the police report named the imposter as "Ousmane Bah" based solely upon SIS' statement as to the imposter's identity and the learner's permit, which stated *on its face* that it did not constitute valid identification, and without conducting any independent investigation. *Id.*

## II.   <u>The Paramus Misidentification Led to Twenty False Felony Theft Charges at Apple Stores Against the Plaintiff in Multiple States.</u>

The following is a summary of Apple store locations from which SIS, on behalf of Apple, falsely accused Ousmane Bah of committing thefts as a result of the Paramus misidentification and the complaint filed by Defendant Yhap and entered by the Paramus detectives. ***<u>Exhibit F</u>***. In each of these cases, including those preceding the Paramus arrest on May 24, the accusations

depended upon the Defendants' false identification of the thief as Ousmane Bah in the Paramus incident:

| Date | Location |
|------|----------|
| 1.  04/02/2018 | Greenwich, CT |
| 2.  04/08/2018 | Greenwich, CT |
| 3.  04/12/2018 | Greenwich, CT* |
| 4.  05/05/2018 | Edison, NJ |
| 5.  05/05/2018 | Millburn, NJ |
| 6.  05/05/2018 | Short Hills, NJ |
| 7.  05/14/2018 | King of Prussia, PA |
| 8.  05/24/2018 | Paramus, NJ* |
| 9.  05/30/2018 | Millburn, NJ |
| 10. 05/31/2018 | Boston, MA |
| 11. 09/15/2018 | Millburn, NJ |
| 12. 09/18/2018 | Freehold, NJ |
| 13. 09/18/2018 | Cherry Hill, NJ |
| 14. 10/17/2018 | Rockaway, NJ |
| 15. 10/22/2018 | Staten Island, NY |
| 16. 10/24/2018 | Staten Island, NY |
| 17. 10/27/2018 | Trumbull, CT |
| 18. 10/29/2018 | Lawrence Township, NJ |
| 19. 12/01/2018 | Holyoke, MA* |
| 20. 02/18/2019 | Rockaway, NJ |

*incidents in which the imposter was apprehended by SIS and/or Apple*

Apple and SIS falsely associated or claimed that the Plaintiff committed twenty felony thefts at Apple stores in a 10-month period, all based upon their reckless identification of the imposter as the Plaintiff in Paramus. In doing so, SIS utilized its own security database, including its "Global Security Operations Center", which it touts as a service advantage to potential customers needing security for stores and events. This database (based upon SIS' own public claims) contained information from Yhap, Morgan, Woodruff, and others concerning their misidentification of Bah, and was curated with the expectation that it would influence or facilitate the capture of offenders and prosecution of thefts in Massachusetts and elsewhere. *Complaint, ¶ 93, 98, 129, 145.*

Because the Plaintiff's name had been recklessly associated with the thief's image in SIS' database after the Paramus incident, he was repeatedly falsely charged in other jurisdictions with each incident of the thief's shoplifting. This became a self-confirming falsehood with each subsequent theft that occurred. SIS and Apple continued to mislead successive police departments regarding this slander far past the point by which their error should have been recognized and corrected, continuing months after they were sued in New York for their reckless conduct.

Charges particularly relevant to the Court's consideration concerning Apple and SIS' wrongful and reckless pursuit of Bah are listed in detail below.

### III. <u>Backdated Identification of Thefts in New Jersey – May 2018</u>

On May 5, 2018, the imposter(s) committed thefts at three Apple stores in New Jersey: Edison, Millburn, and Short Hills. In each of the incidents, the thieves were not apprehended onsite. Following the Paramus arrest on May 24, and as a direct consequence of the thief's Paramus misidentification, SIS determined that the Paramus thief was the same suspect as the perpetrator of the May 5, 2018 thefts. SIS, on behalf of Apple, subsequently filed police reports in those earlier incidents against the Plaintiff, with the expectation that the Plaintiff be criminally charged for the offenses. As with the rest of these false charges, SIS committed to providing the police with security video showing the Plaintiff committing the thefts. *Complaint, ¶ 27.* However, neither Apple nor SIS kept this promise.

### IV. <u>The Boston Theft – May 31, 2018</u>

On May 31, 2018, Apple and SIS employees reported to the Boston, MA police that Boston's Apple store had suffered a theft.  Mere minutes after the theft occurred, an Apple employee called the Boston Police and advised them that the shoplifter was known to them from

a prior theft, based on reliance upon SIS and Apple's previous misidentifications. *Complaint, ¶ 31.* Both Apple and SIS advised the Boston Police that they had positively identified the thief as Ousmane Bah by linking security camera evidence to identifications from a prior theft in Connecticut and committed to provide such evidence to the Boston Police. *Complaint, ¶ 32.*

V. <u>**Apple and SIS' Lie Concerning Destroyed Video of Shoplifting Incidents, Commencing with the Boston Theft**</u>

Plaintiff appeared in Boston Municipal Court in June 2018 and denied being the thief. In fact, on the date of the Boston theft, the Plaintiff was in New York, attending his senior prom. This alibi prompted the Boston Prosecutor, Christopher Boutin, and the Plaintiff's criminal attorney to request copies of the store security videos by subpoena. *Complaint, ¶ 64.*

**Had this video, or even images from the video, been promptly produced by Apple or SIS, as initially promised, it would have definitively demonstrated that the alleged thief was not the Plaintiff. It is likely that all prosecutions against the Plaintiff would have ceased, the Paramus and earlier complaints dropped, and eleven subsequent charges against the Plaintiff over a period of eight months would never have occurred.** *Complaint, ¶ 43.*

However, Apple failed to honor the request of the prosecutor or respect the Boston Municipal Court's subpoena, and the false charges continued through January 2019. On October 19, 2018, "Greg C.," an Apple Privacy & Law Enforcement Compliance team member, responded to the subpoena by emailing counsel, falsely informing him that the store security video had been routinely erased or otherwise destroyed. *Complaint, ¶ 70, 72.*

**This representation was false in multiple respects:**

**A.  Apple still possessed the video.**

Defendants Apple and SIS produced the Boston video in July 2020 in response to discovery requests in the SDNY case.  Moreover, they produced a contemporarily recorded video of another thief in the Boston incident to the Boston prosecutor after the date of the subpoena, without providing it to Plaintiff's counsel.  *Complaint, Exhibit 2.*  Neither Defendant produced an explanation for how the purportedly erased videos had been located.

**B.  Apple has no routine "retention" policy.**

Upon an order from the SDNY Court, Apple and SIS, through counsel, disavowed the existence of any routine protocol for retention or erasure of security videos. *Complaint, ¶74.* The produced videos demonstrated that the corporate Defendants had lied to the Massachusetts prosecutor and the Massachusetts Court regarding the videos and any routine retention policy. *Complaint,* ¶ 74.

**C.  Apple continued to falsely tell other police departments it would preserve video.**

Apple continued to tell other police departments involved in investigating the New Jersey thefts that it could not fulfill SIS' commitment to provide security videos of these thefts throughout 2018, repeating the lie provided in Boston that it had a "retention policy" that caused the videos to be routinely deleted. *Complaint,* ¶ 71, 74, 84.

**VI.  Additional Thefts in New Jersey – September and October 2018**

On September 18, 2018, the imposter(s) committed a theft at Apple stores in Cherry Hill, New Jersey. The imposter was not apprehended on site. Rakia Morgan, an SIS employee, reviewed the video tape from the theft and reported the theft to the Cherry Hill Police

Department, indicating that SIS and/or Apple would "sign charges against Bah," and promised to provide the police with security video of the theft *Complaint, ¶ 79, 80.*

**Once again, these charges were wrongful and without probable cause. Once again, Apple and SIS broke their promise to provide the videos, which were at the least material and actually exculpatory, to law enforcement**.

On September 18, 2018, the imposter stole merchandise from the Apple store in Freehold, NJ. *Complaint, ¶ 81.* On September 20, 2018, Defendant Yhap, acting on behalf of SIS and Apple, filed a complaint falsely accusing Ousmane Bah of shoplifting in Freehold, NJ. Yhap committed to providing the police with security video showing the theft in progress. *Complaint, ¶ 84.* **As with these other charges, Apple and SIS failed to honor their promise to do so.**

On October 17, 2018, the imposter committed shoplifting and exited an Apple store in Rockaway, NJ without apprehension. *Complaint, ¶ 97.* John Woodruff, an employee of SIS, reported the theft to SIS' Global Security Operations Center ("GSOC*")* and filed a report with the Rockaway Township Police accusing Ousmane Bah as the thief. *Complaint, ¶ 100.* Woodruff provided Plaintiff's date of birth, but listed a *different* Ousmane Bah's address in Willingboro, New Jersey—again, evidence of the Defendants' recklessness in these prosecutions. As with other incidents, Woodruff broke a promise to provide the store video to the police department. *Complaint, ¶ 99.*

In the case of the Freehold, Rockaway, and Cherry Hill warrants, the respective police departments continued to request the store video promised by Apple and SIS to shore up their prosecutions. However, emails exchanged between Apple and SIS claimed that as with the Boston video, these videos were routinely deleted. Police departments were advised that the videos had been erased pursuant to a "retention policy" of Defendant Apple. However, as noted

above concerning the Boston incident, Apple and SIS have disclosed that this was false as neither Defendant has such a "retention policy." *Complaint, ¶ 74, 102.*

VII.    **The New York Incident and Subsequent Arrest and Detention**

On October 22, 2018, the imposter committed another theft at an Apple store, this time in Staten Island, NY. At the time the theft was reported, Apple's store manager told a patrol officer that the individual was "known to" Apple's Menlo Park, NJ store. The store captured security imaging of the thief. *Complaint, ¶ 104.*

On November 15, 2018, in response to a query with a privately maintained theft database known as "MetrORCA," SIS agent John Woodruff sent an email advising Detective Reinhold that the Staten Island thief was "known to us" as Ousmane Bah. Relying upon Woodruff's false identification of the thief as Bah, Reinhold pursued a claim against Bah, disregarding evidence that would have led him to the actual thief contained in the NYPD's records. *Complaint, ¶ 108, 115.*

As a result, on November 28 multiple detectives appeared at Bah's parents' house at 4 AM armed with a warrant for Plaintiff's arrest. The arresting detectives cuffed Plaintiff and took him from his home in the Bronx to Staten Island. At the precinct, Detective Reinhold finally compared Mr. Bah to images of the New York thief and released him, subsequently dropping the New York charges. *Complaint, ¶ 113.*[5]

In May 2019, in support of a Motion to Dismiss filed in the Southern District of New York concerning the allegations in this matter, SIS Vice President Thomas Stevens denied that any SIS employee had either identified the Plaintiff as the New York thief or had anything to do

---

[5] It is fair to infer that Detective Reinhold advised Woodruff, SIS, or Apple of this development in an investigation which SIS was hotly pursuing, as SIS employee John Woodruff had exchanged more than half a dozen emails with Detective Reinhold.

with the criminal investigation. As the email sent from SIS employee Woodruff to the New York

Police Department in November 2018 demonstrates, this affidavit was perjured. *Complaint, ¶*

*161, 162; Complaint Exhs. 3, 4.*

**VIII.   The Holyoke Incident and Arrest**

On December 1, 2018, the imposter struck again, this time in Holyoke, Massachusetts.

SIS employees apprehended the imposter as he attempted to steal merchandise from an Apple

store. Defendant SIS agents called the Holyoke Police and recklessly misidentified the imposter

as Ousmane Bah. *Complaint, ¶ 126.* Apple and SIS promised to produce video of the thefts to

law enforcement.

Unlike the Paramus detectives, the Holyoke Police appropriately doubted the

identification provided by the thief, which was again the unreliable learner's permit, and ran an

analysis of the imposter's fingerprints, which determined the imposter's true identity to be

Mamadou Barrie, a (now, former) friend of the Plaintiff. *Complaint, ¶ 131.* The imposter was

extradited to Middlesex County, New Jersey, still under the name of Ousmane Bah, for an

outstanding warrant caused by a different, earlier shoplifting incident at another Apple store.

*Complaint, ¶ 133.* Bah's name continued to be associated with Barrie's even after the

extradition, and well into 2019, and will probably be so associated in criminal databases on line

forever.

**IX.   The Subsequent Post Holyoke Cherry Hill Prosecution and Court Appearance**

On December 12, 2018, *two weeks after the New York charges were dropped*, SIS loss

prevention specialist Rakia Morgan appeared in New Jersey State District Court in Cherry Hill,

NJ to continue to press charges against Bah for the September 18 theft. *Complaint, ¶ 142.* When

Morgan appeared in Court, however, *yet another individual* appeared in response to the

Summons, whose identity was verified by photo identification as a different Ousmane Bah (the

one named by Woodruff with an incorrect residential address). This individual was in his thirties and resided in New Jersey.  The Court dismissed charges against Bah. *Complaint, ¶ 143-44.*

Rakia Morgan immediately advised SIS' Global Security Operations Center ("GSOC") that the thief whom SIS had identified as Ousmane Bah was not, in fact, the imposter. John Woodruff, the individual who had identified Bah to the New York police, was copied on that email. *Complaint, ¶ 145.* Nevertheless, the Boston prosecution continued, as well as the criminal prosecutions in other parts of New Jersey.

### X.   <u>Continued Malicious Prosecution in New Jersey</u>

Plaintiff initiated these claims against Defendant in April 2019, as indicated in the Procedural History, and served the corporate Defendants shortly thereafter. However, the prosecution of Plaintiff as the thief in the Paramus theft continued **even after the SDNY case was filed**. On June 19, 2019, 13 months after the false allegations began, Plaintiff was forced to appear with counsel in Paramus for Court stemming from the Paramus theft. *Complaint, ¶ 151.* After SIS' employee failed to comply with a court order and appear, the Court rescheduled yet another hearing on June 26, 2019, which the Plaintiff was again forced to appear at with counsel. Yhap appeared and confirmed that Bah was not the perpetrator in the Paramus incident, and the matter was dismissed. *Complaint, ¶ 159.*

Beyond falsely charging him throughout the Northeast, the Defendants' actions resulted in the initial denial of the Plaintiff's citizenship, resulting in his fear of deportation for two years after these offenses commenced. Plaintiff has been unable to sleep, fears leaving his home or driving his car out of fear of being wrongfully arrested or accused of being a thief by Apple and/or SIS. *Complaint, ¶ 119, 174.*

**To date, neither Apple nor SIS has ever apologized to the Plaintiff**, explained why he was the repeated target of false claims of theft, or apologized for the repeated and admittedly false accusations. *Complaint, ¶ 155.* Instead, they have engaged in a scorched-earth defense, with repeated Motions to Dismiss and ironically frivolous motions for sanctions, increasingly relying upon information extraneous to the Complaints filed in each respective Court.

## ARGUMENT

### I.  Apple and SIS Acted In Reckless Disregard of the Truth in Identifying Bah in Boston and in Holyoke

#### A.  Standard of Review in a Defamation or Malicious Prosecution Action Where Qualified Law Enforcement is Claimed as a Defense

Plaintiff's right to a trial by jury of his claim is one of the few rights in a civil proceeding which is Constitutionally protected. "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." *U.S. Constitution, Amendment VII.* Rule 12(b)(6)'s stringent standards for dismissal motions such as these regarding burdens upon a moving party; acceptance of allegations in the Complaint as truthful; and requirement that any inferences be drawn against dismissal and in favor of the Plaintiff's claim all stem from that guaranteed right. *See Advisory Notes, Rule 12.*

Therefore, as the Supreme Court has noted, "...a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 555.  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plaintiff has provided detailed allegations, well beyond a "sheer possibility", which demonstrate that SIS and its principal, Apple, falsely accused Plaintiff in 5 states on over 20, based upon mistaken identity which should have been apparent to anyone caring about the accuracy of the charge.

Defendant SIS counters that Plaintiff's claim fails in light of the qualified law enforcement privilege as a matter of law. This privilege is not absolute, but qualified, and therefore presents a factual question, which on its own should warrant denial of a Motion to Dismiss. SIS, to prevail, must prove that there is no factual question as to whether it acted without malice, or without reckless disregard for the truth of its allegations. The detailed allegations of the Complaint, discussed in greater detail below, establish otherwise. The weight of evidence, certainly at the outset of this case, establishes that Defendants, in concert, acted with reckless disregard for the truth of their defamatory allegations, and their repeated false charges are not subject to privilege.

### B.      Definition and Proof of Reckless Disregard

"'Reckless disregard,' it is true, cannot be fully encompassed in one infallible definition. Inevitably its outer limits will be marked out through case-by-case adjudication, as is true with so many legal standards for judging concrete cases, whether the standard is provided by the Constitution, statutes, or case law." *St. Amant v. Thompson, 390 U.S. 727, 730-731 (1968)*[6].

"There must be sufficient evidence to permit the conclusion that the defendant in fact entertained

---

[6] Such an imprecise standard does not lend itself to summary dismissal of Complaints at the outset of litigation.

serious doubts as to the truth of his publication. Publishing with such doubts shows "reckless" disregard for truth or falsity and demonstrates actual malice." *Hip Saver v. Keil, 464 Mass. 517, 529 (2013) citing St. Amant v. Thompson, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968).*

"Because direct evidence of actual malice is rare, it may be proved through inference, and circumstantial evidence. Recklessness amounting to actual malice may be found where a publisher fabricates an account, makes inherently improbable allegations, **relies on a source where there is an obvious reason to doubt its veracity, or deliberately ignores evidence that calls into question his published statements**". *Levesque* v. *Doocy, 560 F.3d 82, 90 (1st Cir. 2009) citing Connaughton, 491 U.S. at 684-85; St. Amant, 390 U.S. at* 732. *See Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983) (emphasis added) (additional citations omitted).

### C.  Defendant's Evasive Parsing of Language and Reversal of the Standard of Review Demonstrates That Plaintiff's Claim Has Merit, Is Presented in Good Faith, and Should Not Be Dismissed

The first demonstrable evidence of the Defendant's recklessness in the Complaint was SIS' reliance in New Jersey upon the use of a learner's permit without a photograph, **which on its face stated that it was unreliable**, and which contained identifying biomarkers such as height and weight which conflicted with the thief's actual ones. This identification in Paramus prompted subsequent misidentifications of the Plaintiff. Additional accusations during SIS' frantic hunt for the real thief merely amplified and repeated the error.

Relying on such a facially unreliable document, by itself, should be viewed as "reckless" by any jurisdiction.  *See Levesque, supra.* However, Defendant seeks to go outside the pleadings, and seeks dismissal based upon a rebutting claim that Defendant did not have access to the thief's "driver's license", and therefore could not have been "reckless" in identifying him.

*Defendant's Memorandum, p. 10 and Defense Exhibit 1; see also Proposed Exhibit 5 (submitted under seal).*

Defendants' motions, arguing inferences, attempts to argue from an investigative report that SIS never reviewed the learner's permit, because its form states that no driver's license was found. Leaving aside the incongruity of the argument, this contention completely inverts the standards for deciding a dismissal motion. This type of careful parsing of language is legal legerdemain and cannot be endorsed by this Court.

Defendants have tried this bit of sleight of hand before. In New York and in New Jersey, Defendants argued that when John Woodruff identified Ousmane Bah as the Staten Island thief, he actually had not "provided his name" to New York law enforcement, but merely stated that the thief was "known to us as Ousmane Bah," so that Woodruff did not falsely "identify" Bah to the NYPD.  This argument was rejected in the Southern District in its recent denial of Defendants' motions.[7]

Having been caught previously submitting false affidavits in dispositive motions[8], this time the affidavit submitted by SIS' Steven Yhap (in the context of the Rule 11 Motion) **does not repeat the claim that SIS never saw the learner's permit**. Instead, the affidavit blandly states that his Paramus report (which rules out only a driver's license) was completed in the ordinary course of business. *See Affidavit, Defendant's Exhibit B*. Keeping in mind the Defendant's affinity for applying a microtome to the English language, neither Yhap <u>nor</u> the report deny the presence of a ***learner's permit***, which, based upon the Paramus police identification (Complaint, ¶ 19) was used to provide the perpetrator's false "identifying

---

[7] On the other hand, if we are to simply accept this distinction, the qualifying statement reflects Woodruff's "serious doubt" that the identification was reliable – again, warranting the denial of Defendant's Motion.
[8] Specifically, the affidavit of SIS' Vice President indicating that SIS employees had never named the Plaintiff to New York authorities, which was clearly false. *See Plaintiff's Exhibits 3 and 4.*

information" of name, address, and birth date – **the information provided in the SIS investigative report.**

While technically Yhap and SIS have not technically _lied_ to the Court here – after all, a "learner's permit" is not a "driver's license" – SIS' pleadings have obfuscated the requisite inference that a permit would be the same thing as a license for the purposes of a report.   By all circumstances, however, the inference, even if attempted, is not supported by the evidence**.** A careful reading of the SIS report reveals that the perpetrator was handcuffed (Defense Exhibit '1', _Loss Prevention Specialist Information_ Section) and his pockets were searched, and keys and the stolen merchandise found in them (See Defense Exhibit 1, narrative section). The learner's permit, which was used by the Paramus police department to provide the identification of the thief as Bah, **was also likely in one of those searched pockets**. Plaintiff imagines that had Yhap failed to conduct a thorough search of a shoplifter's pockets and belongings in which the permit was carried while looking for stolen merchandise, he would have been disciplined by his superiors.

 Thus, from the permit; **likely in reliance on it;** and for purposes of deciding Defendants' Motion, this Court **must conclude** that Yhap was able to log not only Ousmane Bah's name (which could have been given by the perpetrator), but also his _**address and date of birth**_ **from the only source from which it was available – the stolen** _temporary_ _learner's permit – which_ _warned Yhap that it could not be relied upon_**.** [9]

---

[9] It should be no wonder why the Defendant took pains when producing the Paramus report to redact the identification sections from the Exhibit. These redactions, which actually prove that SIS had access to the learner's permit at issue, supply even more evidence of consciousness of guilt. This Court at some point must ask – if this case, with its allegations of 20 separate false charges of felonious theft, is actually "frivolous" -- why is the Defendant going to such lengths to avoid sworn testimony of its actors at deposition?  The answer is obvious.

Such careful wordplay may work in a lawyer's world in interpretation of the technical terms of the kinds of contracts Apple and SIS' lawyers draft. It does not work in the real world, and certainly should not be endorsed in a dismissal motion.

### B. **SIS' Actions Following Paramus, in Conjunction with Those of Apple, Demonstrate Reckless Disregard for the Truth as Well as Objective Evidence of Serious Doubt**

As the First Circuit has noted, "[b]cause direct evidence of actual malice is rare**,** it may be proved through inference, and circumstantial evidence." *Biro v. Condé Nast, 963 F. Supp. 2d 255, 277 (S.D.N.Y. 2013) (quoting Levesque v. Doocy, 560 F.3d 82, 90 (1st Cir. 2009)).* In *Biro,* the court summarized various circumstances that courts have found to be probative of actual malice, including where: **"the defendant knows or suspects that [he] has committed an error and refuses to acknowledge it,"** and "the words or acts of the defendant before, at, **or after the time of the communication** indicate that the defendant knew that his or her statement was or may well have been false." *Id. at 62, Levesque at 277-78 (emphasis added).*[10][11] The Defendants' over precise wordsmithing not only reveals the lack of merit in the Defendants' argument, but also, in a perverse fashion, demonstrates the Defendants' "refusal to acknowledge" the truth and its "entertainment of serious doubt". *Cf. Hennebery. Sumitomo Corp., 532 F. Supp 523, 545 (2007) (evasive or "clever" phrasing of allegations should not be the basis for court relief); Armstrong Pump v. Hartman, 2018*

---

[10] Based upon these tactics, this Court might as well add "or the defaming party attempts to defend their defamation and recklessness by misleading the Court through careful parsing of language."

[11] Incidentally, although in *Levesque,* the First Circuit found expressed statements of doubt in a broadcast did not meet the standard of reckless disregard for truth, the case actually demonstrates that the inquiry into reckless disregard for truth must be individualized and limited to the facts presented. *Levesque v. Doocy* involved Fox Television commentary from infamous host Steven Doocy. The Court in *Levesque* paid great deference not only to the media's critical role in informing the public (an obligation which Apple and SIS both do not share) but also the fact that the tone of the broadcast was "a consistently irreverent (and to many, insensitive) morning television show". Neither Apple nor SIS is a public institution worthy of Constitutional protection nor are in the "irreverence" or parody business, and are therefore not subject to the same kind of indulgence.

*Lexis 8230 (2018); EDI Precast, LLC v. Carnahan, 982 F. Supp. 2d 616, 626 (2013) ("Defendants'*
*argument is too clever by half"); Greenleaf Arms Realty Trust v. New Boston Fund, 81 Mass. App.*
*282,  289-290 (2012).*

    Furthermore, the defendants' mishandling and withholding of exculpatory video
evidence, which SIS and Apple conjointly repeatedly misadvised police departments had been
"routinely deleted or destroyed", is further evidence of reckless disregard for truth – especially
since no such "routine" existed. *Complaint, ¶ 64-76; See Letter, Plaintiff's Exhibit 5[12]*. Again, in
the real world, these misrepresentations reinforce the Plaintiff's contention that the Defendants
doubted the truth of their accusations at the time they were made, which is the essential proof of
the element of reckless disregard for the truth, vitiating their claim of privilege.

    This is particularly true in the Boston prosecution, where Apple (in a prosecution
commenced on its behalf by an SIS complainant) responded to a request from the prosecutor and
a court order (a subpoena) from Mr. Bah's counsel by falsely claiming that the store video
(which showed Bah's imposter committing the theft) had been "routinely deleted"; and then
subsequently  "found" a video from the same event of a third shoplifter, the thief's accomplice,
which they provided to the prosecutor (*not even clarifying that this was a different person than
the one suspected to be the Plaintiff*). As noted in the Facts section, the video of the actual thief
was in Defendants' possession all along and was mysteriously later produced by the Defendants
in response to discovery in the SDNY litigation, more than 2 years after the initial theft – far
beyond any routine retention policy, without any explanation. *Complaint, ¶ 43, 66, 76, 77.* **The
video unquestionably rebuts any notion that Mr. Bah was the thief.**

---

[12] These arguments were specifically pleaded in the Complaint. To demonstrate their authenticity, Plaintiff attaches
to this Memorandum the Defendants' letters denying the existence of such a "routine policy of deletion."

Drawing logical inferences in favor of the Plaintiff, as required here, there's an obvious reason that the Defendants did not want to produce the Boston video evidence – (quoting *Biro*) **"the Defendants suspected that they had committed an error" while the prosecution against the wrong Defendant was pending, and "refused to acknowledge it."** *Biro* at 62.[13] The multiple times that this deceit was repeated to other police departments leads to a logical, if not overwhelming, inference – that during the Boston and other prosecutions, Apple and SIS realized that they'd made a repeated, damning mistake and hoped that it would merely go away on its own without their admitting to it.

Further, Apple and SIS were both forced to admit by a Court order in the New York litigation that they had no such "routine policy" concerning video retention, making the Apple employee's response to the Boston subpoena an outright lie, *Complaint, ¶74*. Kindly stated, this evasion was one of several "misrepresentations" made by the Defendants' employees during this investigation. The cumulative weight of these prevarications is evidence of the Defendants' recognition of their false accusations, and are further grounds for denial of Defendant's Motion.

Once SIS' mistaken identification of the Plaintiff as the thief was exposed after Bah's arrest in New York on November 28, one would have thought that both Apple and SIS would put matters right in every prosecution by seeking their dismissal. However, their failure to do so after the fact a few days later in the Holyoke arrest, where SIS took the thief into custody and identified him to Holyoke Police as "Ousmane Bah", continued this pattern, showing at this point a complete disregard for truth after the company was confronted squarely with it.

Defendants further argue that, after cooperating with the New York Police Department to name Bah as the thief in the Staten Island thefts, unbidden, they somehow became "out of the

---

[13] It is implausible that one of the world's largest technology companies would lack the resources to preserve evidence crucial to a prosecution, or be ignorant of the means to produce it.

loop" after Bah was apprehended, dismissed as a suspect and released. Again, simple logic would force this Court to infer otherwise. As noted in the Complaint, SIS boasts to its prospective clients that it has a "Global Security Operations Center" which is updated in real time with information about investigations as they occur. *Complaint,* ¶ 18. Either this description is pure puffery and a misrepresentation in those materials, or the Defendant's imputation in its pleadings that the information about Bah's innocence somehow escaped GSOC's record keeping is a canard.[14] As with the perjured Stevens Affidavit which followed these events, this inconsistency  should lead the Court to conclude that Apple's security agent SIS does not hold the truth particularly dear, warranting denial of Defendant's motion.

SIS' continued dogged pursuit of "Ousmane Bah" for the Apple thefts lapsed, unfortunately, into Keystone Cop-land in the Rockaway prosecution in New Jersey on December 12, which led to the service of process on a middle-aged New Jersey resident in place of the 18-year-old New York Plaintiff. Woodruff's filing of a completely inaccurate complaint led to this error. His casual mistake in initiating a prosecution at yet another innocent man demonstrates SIS' reckless disregard for the facts and for truth.

The outcome of the Holyoke arrest is further illustrative. The Holyoke Police, with the thief in custody, suspected the thief's identity and fingerprinted him, which confirmed that the long-sought thief was not the Plaintiff. Even in the face of the New York dismissal and this corrected identification, though, SIS continued on Apple's behalf to seek the Plaintiff's wrongful prosecution in New Jersey; did not advise the Suffolk County prosecutor here in Massachusetts of their error; and continued with court actions against Bah in December, January, all the way

---

[14] In other words, SIS' best *marketing* position is that its staff are sophisticated, professional, well trained and well informed; but their best *defense* here is that they are simply human, err, do not follow up on vigorously pursued investigations, and are incompetent. Fortunately, the Court does not have to make that choice; that is best left to the jury following discovery.

through June. Such obduracy, in the face of all evidence to the contrary, meets *Biro*'s posited criteria of "refusing to acknowledge the truth" after the fact, which again constitutes reckless disregard for the truth.

- If the Defendants' relentless pursuit of an innocent man on 20 different occasions does not evidence "reckless disregard for the truth";
- If use of a nonphotographic paper temporary ID which warns on its face that it is unreliable is not "reckless disregard for the truth";
- If continuing to pursue charges against the Plaintiff after he is apprehended and actually shown not to be the thief is not "reckless disregard for the truth";
- If continuing prosecutions, and failing to advise prosecutors of their error, for months after Ousmane Bah was irrefutably proven not to be the thief, does not constitute "reckless disregard for the truth";
- **Then prosecution of a different man with the same name who was resident of a different state should be sufficient "disregard for the truth" to deny Defendant's motion**.

Overall, Apple's security force's amateurish, ad hoc and clearly incompetent prosecution should particularly trouble the Court, given that SIS is operating essentially as a police department without portfolio, without the public obligations, accountability and Constitutional protections which police departments are bond to honor. Worse, by arguing that they are legally entitled to err so grievously in this fashion without consequence, the Defendants here are seeking the same immunities which 28 USC §1983 affords at common law – qualified immunity – without the kind of public duties and limitations which justify police officers' qualified immunity, in service of Apple's private benefit, rather than the public good. However, this Court feels the law dictates burdens, the Defendant must be subject to at least some of them – at the very least, to get their facts straight before accusing someone of a crime multiple times.

As noted above in the Preliminary Statement and Procedural Statement, the defense has attempted to dismiss this matter in New York twice for these same reasons.  Both times, Judge Castel of that Court denied their motions, as recently as September 8. Judge Castel's opinion, found in the docket of that Court, noted as follows:

"Discovery has been ongoing for nine months, yet the fruits of discovery are not permissibly considered on this motion to dismiss. While the grounds asserted for dismissing the claims are context dependent, the context has not and cannot be fully presented on this motion. The Court will deny the motions to dismiss the private defendants' motions without prejudice to reassertion of the grounds on a full evidentiary record."

Such "context" and "complete record" can only be developed through full and complete discovery, which has yet to occur in this or any Court. Accordingly, the Defendant's Motions should be denied.

Because of the failure to produce a video in their control after a court subpoena in Massachusetts, and Defendants' continued false accusations of Bah as a thief in Holyoke after the Staten Island arrests conclusively proved that the suspect was not the Plaintiff, Defendants' actions in Massachusetts were even more egregious than those alleged in New York, which were sufficient to deny Defendants' repeated dismissal motions. Accordingly, this Court should summarily deny the Motions presented here – **particularly, the Defendants' Rule 11 Motions. A series of claims based upon these allegations which survived not one, but TWO Motions to Dismiss can hardly be described as "frivolous."**

### C.  <u>The Defendants May Not Use the Alleged Lack of Due Care by Plaintiff As Grounds for Dismissal</u>

The motions also Both Defendants in multiple jurisdictions have repeatedly attempted to introduce a plethora of facts outside the complaint to persuade courts that the matter is untenable; that Plaintiff is unlikely to succeed; that the weight of evidence disfavors a recovery; or that Plaintiff's duty to mitigate injury by disclosing the person he believed to be his imposter somehow is an overarching cause which displaces Apple and SIS' duty to properly investigate or refrain from accusing an innocent man of a felony. Perhaps more outrageous than their attempted prior reliance upon a false affidavit is that the Defendants—sophisticated, multi-national

corporations, with practically unlimited resources—still claim the Plaintiff's own conduct makes his attempt to obtain relief so groundless and absurd that both he and his counsel must be sanctioned. However, the question of whether the plaintiff is contributorily negligent, even where the Plaintiff faces a higher burden of proof, is always a question for the jury, not the Court.  *Barrett v. Building Patent Scaffolding Co., 311 Mass. 41, 46 (1942); See Peck v. Garfield, 862 F.2d 1, 15 (1988).*

Defendants further unrealistically claim that a Black, Muslim teenager, while seeking citizenship in the United States during Donald Trump's openly anti-immigration, anti-Muslim Presidency, has an affirmative (indeed, superseding) duty to seek police cooperation that somehow supersedes the duties of the Defendants to refrain from false accusations, even while Defendants hid or disposed of evidence which would have acquitted him.

To begin with, the Defendants' argument relies on matters completely extraneous to the Complaint. The exception for consideration such outside documentation is narrow, and generally limited to a document specifically referred to in a pleading. *See Fudge v. Penthouse International, Ltd., 840 F.2d 1012, 1015 (1988); Watterson v. Page, 987 F.2d 1 (1993)*. The facts which Defendants attempt to fold into this Motion are far afield of that exception.

Also, the law runs completely contrary to Defendants' argument that the Plaintiff's behavior excuses their own breaches of care.[15] *See, e.g., Orthmann v. Apple River Campground, Inc., 757 F.2d 909, 913 (Posner, J., 1985); Plan Comm. v. Price Waterhouse, LLP. 335 BR 234, 251 (2005); See Mounsey v. Ellard, 363 Mass. 693, 710, and discussion therein (1973)*. In evaluating Plaintiff's behavior this Court must take into account not just the Plaintiff's actions but his circumstances. *Mounsey, supra; See Papadopoulos v. Target Corp., 457 Mass. 368, 378*

---

[15] Massachusetts statutorily eliminated "assumption of the risk" as a defense over a half century ago. *Massachusetts General Laws Chapter 231 §85, as amended in 1969.*

*(2010).* Defendants' argument entirely ignores the context of the Plaintiff's situation, as a black Muslim high school student repeatedly falsely accused of theft by multiple police departments and one of the world's largest and presumably most powerful corporations.

Moreover, the "duty" that Defendants urge this Court to find relies upon clicheed and rejected behavioral assumptions, especially given the Plaintiff's age and race.  Massachusetts courts have formally recognized that a black teenager's world is dramatically different than that used by Defendants as a model for "reasonable behavior".  As the Massachusetts Supreme Judicial Court noted in *Commonwealth v. Evelyn, 485 Mass. 691, 700 (2020)*:

> We agree that the troubling past and present of policing and race are likely to inform how African-Americans and members of other racial minorities interpret police encounters. …  African-Americans, particularly males, may believe that they have been seized in situations where other members of society would not. *See Maclin, "Black and Blue Encounters" — Some Preliminary Thoughts About Fourth Amendment Seizures: Should Race Matter? 26 Val. U. L. Rev. 243, 255 (1991)* ("**Black males learn at an early age that confrontations with the police should be avoided; [B]lack teenagers are advised never to challenge a police officer, even when the officer is wrong"**).  *Id. at 701 (emphasis added) (citations omitted)*

> The Court continued:

> "Even if this blight were eradicated today, a long history of race-based policing likely will remain imprinted on the group and individual consciousness of African-Americans for the foreseeable future. *See Commonwealth v. Phillips, 413 Mass. 50, 53, 595 N.E.2d 310 (1992)* (describing how informal policy of Boston police created "martial law" for some young African-Americans). *See also Terry, 392 U.S. at 14 n.11, 88 S.Ct. 1868* ("field interrogations are a major source of friction between the police and minority groups"  [citation omitted] ); *Henning, The Reasonable Black Child: Race, Adolescence, and the Fourth Amendment, 67 Am. U. L. Rev. 1513, 1531 (2018)* ("**many [B]lack youth ... transfer negative attitudes and resentments about the police from one generation to the next as youth internalize the negative experiences of their community**").  *Id. at 701 (Emphasis added).*

Defendants' arguments do not comport with modern day jurisprudence, and are not "objective" when applied to an 18-year-old teenager living in a world of threat. This Court

should, as it must for purposes of these motions, instead infer that the Plaintiff reasonably feared

the consequences of involving himself in an investigation of another black man, a former friend,

even when that friend harmed him. Regardless, weighing Defendants' conduct against that of the

Plaintiff presents a dispute for a jury to decide, not the court. The Constitutional imperative of a

right of jury trial in this setting would be upended should the Court find otherwise.

## **CONCLUSION**

In summary, Defendants have failed to provide any legal basis for dismissal of this Complaint.

The countering arguments deployed by them are evidence-dependent and are inappropriate for

dismissal at the commencement of litigation, and Defendant's Motion to Dismiss and cojoined Motion

for Sanctions are so far afield of the standards for these proceedings *as to themselves be frivolous*.

Defendants' fact based arguments have been rejected on two occasions as grounds for dismissal by

other United States District Courts.  The Motions should therefore be **DENIED**.


Respectfully Submitted,


Daniel Malis, Esq.
BBO #315770
MALIS|LAW
30 Second Street
Cambridge, MA  02141
(617) 491-1099
daniel.malis@malislaw.com
*Attorney for Plaintiff*

Date:   September 10, 2021

**REQUEST FOR ORAL ARGUMENT AND CERTIFICATE OF SERVICE**

Should this Court not summarily deny Defendants' Motions, Plaintiff, through counsel, request that this Court schedule this matter for oral argument.

I hereby certify that I have served this pleading upon all counsel of record via CM/ECF as of the date stated herein.

Daniel Malis, Esq.
BBO #315770
MALIS|LAW
30 Second Street
Cambridge, MA 02141
(617) 491-1099
daniel.malis@malislaw.com

# EXHIBIT 6

## (Unredacted SIS Exhibit 1)

## (Under Seal)